**In the Matter of Frank Pio CRIVELLO, Debtor.**

Nos. 96–C–549, 92–27252–CNC–7.

United States District Court, E.D. Wisconsin.

Feb. 18, 1997.

Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, WI, for Appellant.

David W. Asbach, Milwaukee, WI, for United States Trustee.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The appellant, Kravit, Gass & Weber, S.C. ["KGW"], appeals from the March 25, 1996, final order entered by then United States bankruptcy judge Charles N. Clevert denying KGW's final fee application for compensation and reimbursement of expenses for its services as counsel to Frank P. Crivello, the chapter 11 debtor-in-possession, [the "debtor"] in his bankruptcy case.

### I. BACKGROUND

The United States Trustee and KGW filed a comprehensive stipulation in the bankruptcy court in connection with KGW's fee application. For the most part, the following facts are based on that stipulation.

On November 20, 1992, the debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. On August 9, 1994, the debtor's case was converted from a reorganization proceeding under chapter 11 to a liquidation proceeding under chapter 7. The debtor, as the debtor-in-possession, sought to employ KGW as counsel in connection with his bankruptcy proceeding on December 8, 1992, pursuant to 11 U.S.C. § 1107(a) and § 327(a). The employment application was accompanied by an affidavit of disinterestedness pursuant to Bankruptcy Rule 2016(b) in which attorney Leonard G. Leverson stated that KGW did not hold any interest adverse to the debtor or to the chapter 11 estate. The bankruptcy court approved the application for employment of KGW on February 8, 1993, with retroactive effect to November 20, 1992.

Subsequently, it was learned that KGW had actually begun representing the debtor in certain civil matters unrelated to the bankruptcy proceeding in the first half of 1991. (Record No. 68 ¶ 2.) Between November 20, 1991, through June 1, 1992, National Management, Inc. ["NMI"] made a series of payments to KGW relating to KGW's pre-petition joint representation of the debtor and Joseph Crivello. (Record No. 68 ¶ 3.) Joseph Crivello is a cousin of the debtor and is an "insider" as that term is defined in the Bankruptcy Code. (Record No. 68 ¶ 17.) At all relevant times, Joseph Crivello was the sole stockholder in NMI. (Record No. 68 ¶ 5.)

The debtor was employed as the executive vice-president of NMI from January 1, 1993, through August 9, 1994. Prior to that time, the debtor was employed by NMI as a consultant. (Record No. 68 ¶ 15.)

Before November 20, 1992, KGW had also represented the debtor, Joseph Crivello, as well as two of the debtor's companies—CP Holdings II, Inc., and FPC Construction, Inc.—in matters in which these corporate entities were sued jointly with the debtor. (Record No. 68 ¶ 7.) As of the filing date of the voluntary petition under chapter 11, KGW was prepared to represent 122 compa-

nies owned in whole or in part by the debtor in connection with any criminal investigation of the debtor. (Record No. 68 ¶ 10.) These 122 companies are "insiders" as that term is defined under the Bankruptcy Code. (Record No. 68 ¶ 10.)

The debtor owed KGW approximately $42,500 for legal services for criminal and civil matters unrelated to the chapter 11 bankruptcy proceeding before he filed his voluntary petition under chapter 11. This fact was not disclosed by the debtor in his application of employment or by KGW in the affidavit of disinterestedness filed by attorney Leverson. (Record No. 5.) Of the amount owed to KGW, $5,670 was paid from a $10,000 retainer that KGW received from NMI on November 20, 1992—the date that the debtor commenced his chapter 11 bankruptcy proceeding. (Record No. 68 ¶¶ 28D and 29; Record No. 4.) Thus, when the debtor sought to employ KGW as counsel on December 8, 1992, the debtor still owed $36,926.98 to KGW for pre-petition legal services ($18,823.40 fee for civil matters and $18,103.58 fee for criminal matters). (Record No. 68 ¶ 11.) KGW did not disclose this debt to the bankruptcy court or to the U.S. Trustee until March 13, 1995, when attorney Leverson filed a supplement to his amended affidavit of disinterestedness. (Record No. 56.) The supplement to the amended affidavit further disclosed that KGW waived its $18,103.58 claim against the debtor for pre-petition criminal legal services. (Record No. 56.) KGW did not file a claim against the estate in the debtor's chapter 11 case. (Record No. 68 ¶ 12.)

On April 30, 1993, despite its assertion that it had waived the debtor's $18,103.58 pre-petition debt for criminal services, that debt was paid when KGW applied a $50,000 flat fee retainer that it had received from Sierra Holding Corporation, an entity wholly owned by Joseph Crivello, to the waived pre-petition debt. (Record 68 ¶¶ 22, 23 and 24.) The $50,000 retainer was also applied to an outstanding fee for post-petition legal services rendered by KGW to the debtor. (Record No. 68 ¶¶ 22, 23 and 24.)

The following persons and entities were listed as creditors in the debtor's original chapter 11 bankruptcy schedules: NMI, Joseph Crivello, Fifth Corp., Cambridge Business Finance Co., Corporate Center Management, Inc., Corporate Computers, Inc. and FPC Construction, Inc. (Record No. 68 ¶ 13.) The following persons and entities filed claims against the debtor in his bankruptcy case: NMI, Fifth Corporation, Berkshire, I.C.T. II Corporation, Plaza Twenty Three, Inc., and Cambridge Business Finance Co., Inc. (Record No. 68 ¶ 18.)

At all relevant times, Joseph Crivello owned the stock, either directly or indirectly, in the following corporations: NMI, Fifth Corp., Sierra Holdings, Inc., Sierra Finance Co., Berkshire Factoring, Inc., ["Berkshire"] and I.C.T. II Corporation. (Record No. 68 ¶ 6.) Joseph Crivello did not personally file a claim in the debtor's bankruptcy case. (Record No. 68 ¶¶ 5 and 20.) As early as February 3, 1993, Berkshire became a creditor of the debtor when it purchased the claims of others. (Record No. 68 ¶ 26.) On September 3, 1993, Berkshire paid $45,542 to KGW for legal services provided to the debtor. (Record No. 68 ¶ 31.)

On February 22, 1994, Joseph Crivello retained KGW to provide advice regarding a potential gaming venture. (Record No. 68 ¶ 27.)

KGW first sought interim compensation in the chapter 11 case on October 25, 1993. Over the objection of the U.S. Trustee, the bankruptcy judge authorized an award to KGW in the amount of $80,000 by order of December 23, 1993. (Record No. 26.) On June 2, 1994, KGW filed an application for final compensation. The June 2, 1994 application was amended on September 19, 1994. On November 28, 1994, KGW filed a second application for interim compensation pending resolution of its request for final compensation. The U.S. Trustee filed objections to both of KGW's applications.

In the applications for final and interim compensation, KGW acknowledged that it had received funds from NMI for defending nondischargeability actions against the debtor in the chapter 11 proceeding. KGW filed supplemental attorney's statements in accordance with Bankruptcy Rule 2016(b) which

disclosed that it received additional funds from NMI for other services provided to the debtor for nondischargeability defense work and for work performed for the debtor after the case was converted to a liquidation proceeding under chapter 7. (Record No. 68 ¶ 30.) The following payments were made to KGW by NMI for services rendered by KGW to the debtor:

| | Date | Amount |
|---|---|---|
| A. | 8/3/92 | $ 7,258.09 |
| B. | 10/1/92 | 6,910.50 |
| C. | 11/2/92 | 13,765.21 |
| D. | 11/20/92 | 10,000.00 |
| E. | 3/4/93 | 20,000.00 |
| F. | 4/30/93 | 13,000.00 |
| G. | 7/15/93 | 30,000.00 |
| H. | 10/20/93 | 23,150.07 |
| I. | 10/21/93 | 2,179.73 |
| J. | 11/19/93 | 30,000.00 |
| K. | 2/15/94 | 11,171.37 |
| L. | 5/10/94 | 18,030.95 |
| M. | 7/20/94 | 22,478.78 |
| N. | 8/18/94 | 28,142.80 |
| O. | 9/6/94 | 15,000.00 |
| P. | 10/12/94 | 10,000.00 |
| Q. | 11/22/94 | 10,000.00 |
| R. | 12/27/94 | 70.82 |
| S. | 12/31/94 | 8,818.61 |
| T. | 3/20/95 | 1,391.20 |

(Record No. 68 ¶ 28.) The funds paid by NMI to KGW on behalf of the debtor were not wages or salary to the debtor. (Record No. 68 ¶ 32.) During the period between November 20, 1992, and the date that the proceeding was converted to a chapter 7 proceeding, NMI occasionally paid or advanced personal expenses of the debtor and his spouse which were either reimbursed or treated as gifts. (Record No. 68 ¶ 33.)

A number of hearings were held by the bankruptcy judge in connection with KGW's requests for compensation. The U.S. Trustee was permitted to conduct discovery regarding KGW's fee applications. By decision and order of March 25, 1996, the bankruptcy court denied KGW's application for compensation in its entirety on the ground that KGW was not a disinterested person and that KGW had "willfully failed to disclose critical facts and connections" with the debtor. (Memorandum Decision and Order of March 25, 1996, p. 14.)

## II. ANALYSIS

On appeal, KGW challenges the bankruptcy judge's denial of its request for fees on two levels. KGW insists that the bankruptcy judge's conclusion that KGW was not a disinterested party is based on insufficient evidence. In addition, KGW argues that the bankruptcy judge's decision to deny its request for compensation rests on the erroneous legal premise that the bankruptcy court was not permitted to exercise its discretion to award KGW compensation and reimbursement of expenses after finding that KGW was not a disinterested person.

On appeal of a final order of a bankruptcy court, I am obligated to "affirm, modify, or reverse [the] court's ... order, ... or remand with instructions for further proceedings." Bankruptcy Rule 8013. Factual findings of the bankruptcy court are to be reviewed under a clearly erroneous standard, but conclusions of law are to be reviewed de novo. Bankruptcy Rule 8013; *Matter of Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989).

A factual finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction, after reviewing the entire record, that a mistake has been committed. *E.E.O.C. v. Sears, Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir.1988).

### A. Sufficiency of Factual Findings

Employment of professional persons by a debtor-in-possession under chapter 11 is governed by 11 U.S.C. § 327(a), which provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

A "disinterested person" is defined under 11 U.S.C. § 101(14) as a person that:

(A) is not a creditor, an equity security holder, or an insider;

\*　　\*　　\*　　\*　　\*　　\*

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;....

■ As correctly noted by the bankruptcy judge, subsection (E) is the catchall phrase which encompasses anyone who may have an interest in or relationship with the debtor tending to color the objective and impartial perspective required of attorneys and other professionals by the Bankruptcy Code. (Memorandum Decision and Order of March 25, 1996, p. 6) (citing 2 *Collier on Bankruptcy* ¶ 327.03[3][f]; *In re Global Marine, Inc.*, 108 B.R. 998, 1005 (Bankr.S.D.Tex.1987)).

In order to ensure compliance with the provisions of 11 U.S.C. §§ 101(14) and 327(a), certain disclosures must be made in accordance with Bankruptcy Rule 2014(a), which provides, in pertinent part (emphasis added):

The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, *and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest,* their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed *setting forth the person's connections with the debtor, creditors, any other party in interest,* their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Compensation of professionals employed by the debtor-in-possession is governed, in part, by 11 U.S.C. § 328. Under this statute, a court *"may* deny allowance of compensation" rendered by a professional person employed under 11 U.S.C. § 327

if, at any time during such professional person's employment ... *such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate* with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (emphasis added).

In the instant case, the bankruptcy judge concluded that KGW was not a disinterested person under 11 U.S.C. § 101(14) and that KGW did not adequately disclose its connections as required under Bankruptcy Rule 2014(a). KGW argues that these factual findings are based on several "clear errors."

### 1. *Disinterested Person*

■ The bankruptcy judge's conclusion that KGW was not a disinterested person, was based, in part, on his finding that, immediately prior to filing his voluntary petition under chapter 11, the debtor had transferred funds to three business entities in which Joseph Crivello was the principal shareholder: Berkshire, Sierra Holding Corporation and Fifth Corporation. KGW contends that the evidence in the record does not support this finding. The U.S. Trustee acknowledges that there is "no specific reference in the stipulation nor can it find one elsewhere in the trial transcript or other portions of the record of any transfer of assets from the [d]ebtor to those corporations." (Brief of the Appellee at p. 41.) Nevertheless, the U.S. trustee argues that there are sufficient *other* facts in the record to support the bankruptcy judge's conclusion that KGW was not a disinterested party. I agree.

The bankruptcy judge correctly found that KGW had been a creditor of the debtor since the bankruptcy proceeding started. KGW does not dispute this fact. However, KGW maintains that its status as a creditor *by itself* does not disqualify it from representing the debtor. In support of this proposition, KGW relies on the decision of Judge John W. Reynolds in *Matter of Carter,* 116 B.R. 123, 126 (E.D.Wis.1990), which held that an attorney who met the Bankruptcy Code's definition of creditor was nonetheless disinterested and eligible for employment.

I need not decide the issue of whether a professional person's status as a creditor, without more, disqualifies that person from representing the debtor. This is so because the bankruptcy judge's conclusion that KGW was not a disinterested person was also based on his finding that KGW held an interest materially adverse to the estate.

The bankruptcy judge's conclusion that KGW held an interest materially adverse to the estate was premised, in part, on the fact that KGW received payments from NMI, a creditor of the estate, which was owned by Joseph Crivello—another creditor of the estate—for KGW's representation of the debtor. The bankruptcy court found that the payments KGW received from NMI (as well as from other corporations owned and controlled by Joseph Crivello) made it unlikely that "KGW could or would take a position contrary to [NMI], Joseph or the other entities paying for its services, at the risk of offending the 'hands that feed it.'" KGW does not challenge any of these factual findings.

Thus, after reviewing the entire record, I believe that the bankruptcy judge's finding that KGW was an interested person under 11 U.S.C. § 101(14), is not clearly erroneous, per Bankruptcy Rule 8013.

### 2. Failure to Disclose

█ The bankruptcy judge determined that denial of KGW's request for compensation was warranted on another independent ground. The bankruptcy judge concluded that KGW had "willfully failed to disclose critical facts and connections with the debtor—most notably that the law firm represented [the debtor] for almost two years prior to bankruptcy, and [ ] attempted to thwart the disclosure requirements."

KGW argues on appeal that there is nothing in the record to support a finding that any failure to disclose on its part was "willful" or done to "thwart the disclosure requirements."

In his decision, the bankruptcy judge does not identify the evidence he relied on in determining that KGW's failure to disclose was "willful." Moreover, while the U.S. trustee addresses in great detail the evidentiary basis for the bankruptcy judge's conclusion that KGW had not met the relevant disclosure requirements, he fails to point to any evidence in the record to support the bankruptcy judge's conclusion that such failure was willful. The bankruptcy judge's determination that KGW had "attempted to thwart the disclosure requirements" is similarly deficient.

Nevertheless, I do not believe that these evidentiary deficiencies warrant reversal of the bankruptcy judge's decision. This is so because Judge Clevert's decision to deny KGW's requests for compensation under 11 U.S.C. § 328(c) was also based on the independent and adequate finding that KGW was not a disinterested person.

### B. The Decision to Deny Compensation

KGW argues that the bankruptcy judge erred as a matter of law in holding that he could not exercise discretion in denying compensation under 11 U.S.C. § 328(c) once he determined that KGW was not a disinterested party. In my opinion, the memorandum decision of March 25, 1996, does not support KGW's contention that Judge Clevert failed to exercise his discretion under 11 U.S.C. § 328(c).

Nowhere in the memorandum decision of March 25, 1996, did Judge Clevert state or suggest that he lacked discretion to award fees under 11 U.S.C. § 328(c) in view of his finding that KGW was not disinterested. Indeed, his discussion of the law surrounding the decision to deny compensation suggests the opposite. See Memorandum Decision and Order of March 25, 1996, pp. 7–8 (emphasis added) ("A failure to disclose any of the connections contemplated by these provisions, even if negligent or inadvertent, *may* be the basis for the denial or disgorgement of fees, and/or disqualification from further representation.").

KGW's argument is based on the fact that Judge Clevert's decision included a citation to *Michel v. Federated Department Stores, Inc.*, 44 F.3d 1310 (6th Cir.1995), the holding of which suggests that compensation must be denied where there has not been a valid appointment. However, KGW overlooks the

fact that the *Michel* case was cited by Judge Clevert (along with six other cases) in support for his conclusion that a failure to disclose may be the basis for the denial of fees.

In my opinion, the memorandum decision of March 25, 1996, reveals that Judge Clevert's decision to deny compensation was based on the circumstances surrounding KGW's disclosure—which he described as "piecemeal"—his stated belief that KGW's loyalty and motives were questionable, as well as his conclusion that KGW was not disinterested. Thus, I find that Judge Clevert, in fact, exercised his discretion when he denied KGW's requests for compensation under 11 U.S.C. § 328(c).

Therefore, IT IS ORDERED that the March 25, 1996, order of the bankruptcy court denying KGW's application for compensation and reimbursement of expenses be and hereby is affirmed.