In re Frank Pio CRIVELLO, Debtor.

**KRAVIT, GASS & WEBER,
S.C., Appellant,**

v.

**M. Scott MICHEL, United States
Trustee, Appellee.**

No. 97–1646.

United States Court of Appeals,
Seventh Circuit

Jan. 9, 1998.

Thomas L. Shriner, Jr. (argued), Foley & Lardner, Milwaukee, WI, for Appellant.

John L. Daugherty, Executive Office for the United States Trustees, Washington, DC, John R. Byrnes (argued), United States Department of Justice, avid Walter Asbach, United States Trustee/DOJ, Milwaukee, WI, for Appellee.

Before POSNER, Chief Judge, MANION and KANNE, Circuit Judges.*

KANNE, Circuit Judge.

In its application for employment as bankruptcy counsel for Frank Crivello, the debtor-in-possession, Kravit, Gass & Weber, S.C. ("KGW"), did not disclose prior interactions it had with the debtor as well as its prepetition claims against him. After approving its petition, the bankruptcy court learned of these connections, revoked KGW's employment order, and denied its petitions for compensation. KGW appealed to the district court, which affirmed the denial of all fees. KGW then appealed to us. We agree with the lower courts' conclusion that bankruptcy courts have discretion to deny fees under 11 U.S.C. § 328(c) for professionals employed under 11 U.S.C. § 327(a), but we reverse the district court's affirmance and remand this matter to the bankruptcy court because erroneous findings of fact may have tainted the bankruptcy court's exercise of discretion.

## I. HISTORY

This case revolves around the actions of two cousins, Frank and Joseph Crivello, and the law firm that represented them, KGW. Frank Crivello filed a voluntary chapter 11 petition on November 20, 1992. At this time, Frank Crivello scheduled Joseph Crivello,[1] National Management, Inc. ("NMI"), and Fifth Corporation as creditors. Joseph Crivello was the sole shareholder in NMI. Joseph also owned stock, directly or indirectly, in Fifth Corporation. NMI, Fifth Corporation, Berkshire Factoring, Inc. ("Berkshire"), and ICT II Corporation filed claims against Frank Crivello in the proceeding. Joseph Crivello owned stock in Berkshire and ICT II Corporation. He did not, however, personally file a claim against the estate.

On December 8, 1992, Frank Crivello, as debtor-in-possession, filed an employment application in the bankruptcy court to retain KGW as his counsel in the chapter 11 proceeding. As required by Fed.R.Bankr.P. 2016(b), accompanying this application were an attorney's statement ("a 2016(b) statement") and an affidavit from Leonard G. Leverson, a shareholder of KGW with bankruptcy experience. He attested that neither he nor any member of his firm held or represented any interest adverse to the debtor or the estate and identified seven creditors of the debtor that KGW had represented in other matters. The firm's 2016(b) statement disclosed a $10,000 bankruptcy retainer paid by NMI on Frank Crivello's behalf. KGW had applied $600 of the retainer to Crivello's chapter 11 filing fee and $5,670.94 to pre-petition financial advisory services.

On January 11, 1993, Assistant United States Trustee John R. Byrnes wrote Leverson to reiterate that the application for employment should state all of the funds KGW had obtained from Frank Crivello and should disclose the source of the funds. Byrnes also requested that Leverson clarify the scope of KGW's services, including its representation of Frank Crivello in any criminal investigation. Leverson responded that he did not believe the matters into which Byrnes inquired were appropriate for disclosure in a 2016(b) statement under his reading of § 329(a) of the Bankruptcy Code, 11 U.S.C. § 329(a). He offered to reconsider his view if Byrnes would direct him to authority contrary to his interpretation. Byrnes never responded. On February 8, 1993, the bankruptcy court authorized the debtor to retain KGW as his chapter 11 counsel with retroactive effect to November 20, 1992.

---

* This opinion has been circulated among all judges of this court in regular active service in accordance with Seventh Circuit Rule 40(e). No judge favored a rehearing *en banc* notwithstanding the contrary decision of the Sixth Circuit in *Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.),* 44 F.3d 1310 (6th Cir. 1995).

1. Joseph Crivello, as a cousin of the debtor, is an insider. *See* 11 U.S.C. § 101(31)(A)(I).

In its 2016(b) statement and affidavit, KGW did not disclose numerous interactions the firm had with Frank Crivello as of the petition date. It had previously represented Frank Crivello and Joseph Crivello in matters in which they were sued jointly. KGW also was and had been representing Frank Crivello in defense of criminal matters, including several pending federal criminal investigations. Finally, it had agreed to represent 122 companies owned in whole or in part by the debtor in defense of any criminal investigation of Frank Crivello. All of these companies were insiders of Frank Crivello.

KGW also did not disclose its prepetition claims against Crivello and a series of triangle payment schemes between Frank Crivello, Joseph Crivello, and Joseph's companies. Immediately prior to the filing of bankruptcy, Frank Crivello owed KGW $18,103.58 for criminal matters and $18,823.40 for civil matters. The firm did not disclose these prepetition claims for fees until March 13, 1995, when it filed a supplement to its affidavit of disinterestedness. That disclosure stated that KGW had waived the $18,103.58 claim for prepetition criminal representation. KGW did not file a claim against the estate.

It is questionable whether KGW waived this claim. On December 31, 1992, KGW received a $50,000 retainer from Sierra Holding Corp., a company owned by Joseph Crivello. This payment was intended to be in anticipation of work KGW would complete for Sierra Finance Co., which is also owned by Joseph. On or about April 30, 1993, KGW applied this retainer to Frank Crivello's outstanding balance for services rendered in KGW's criminal representation of Crivello. KGW then applied the remainder of the sum to Crivello's bill for postpetition legal services. KGW claims that this application of the Sierra payment was inadvertent. Once Leverson discovered the error, he disclosed it to the United States Trustee, M. Scott Michel, and supplemented his affidavit of disinterestedness.

The outside payments did not stop there. Between November 20, 1991 and June 1, 1992, NMI[2] paid KGW for joint representa-

tion of Frank and Joseph Crivello. On September 2, 1993, Berkshire paid KGW $45,542 for representing Frank Crivello. NMI also paid KGW at least $281,368.10 from August 3, 1992 to March 20, 1995 for representing the debtor. Finally, Joseph Crivello retained KGW on February 22, 1994 to provide advice about a potential gaming industry venture.

On October 25, 1993, KGW applied to the bankruptcy court for interim compensation of $169,825.68 as required by 11 U.S.C. § 330 and Fed.R.Bankr.P. 2016(a). Over the objections of some creditors and the United States Trustee, the bankruptcy court awarded KGW $80,000. On June 2, 1994, the firm filed an application for final compensation of $334,484.94. This application was amended on September 19, 1994. On November 28, 1994, KGW filed a second application for interim compensation pending a determination on its application for final compensation. The United States Trustee objected to all of these applications. It claimed that KGW was not disinterested, that KGW failed to disclose its connections to insiders adequately, and that the amount of the request was unreasonable.

In connection with its fee applications and in response to the United States Trustee's objections, KGW filed supplemental 2016(b) statements on October 27, 1994, December 6, 1994, January 17, 1995, and April 19, 1995. These statements revealed some details of NMI's payments to KGW for services on behalf of the debtor.

KGW also filed an amended affidavit of disinterestedness in connection with a hearing on the second interim fee application on December 27, 1994. It explained that KGW's original affidavit of disinterestedness did not mention the firm's prepetition representation of Joseph Crivello because his name did not appear in the creditor mailing matrix when the attorneys at KGW cross-checked the lists of current and former KGW clients with the mailing matrix of Frank Crivello's creditors.

On March 25, 1995, the bankruptcy court revoked KGW's employment order and denied its application for compensation in its

---

2. As of the petition date, NMI employed Frank Crivello as a consultant, and from January 1, 1993 to August 9, 1994, NMI employed him as executive vice-president.

entirety. *See In re Crivello*, 194 B.R. 463 (Bankr.E.D.Wis.1996). The court specifically found that KGW was not a disinterested person and that KGW had "willfully failed to disclose critical facts and connections with Frank" Crivello. *Id.* at 469. KGW appealed this decision.

On February 18, 1997, the district court affirmed the bankruptcy court. *See In re Crivello*, 205 B.R. 399, 405 (E.D.Wis.1997). The court, however, found no support in the record for the bankruptcy court's findings that KGW had willfully failed to disclose its connections with the debtor and that KGW had attempted to thwart the Bankruptcy Code's disclosure requirements. *See id.* at 403–04. Nevertheless, the district court determined that these evidentiary deficiencies did not warrant a reversal because the bankruptcy court's decision to deny KGW's requests for compensation under 11 U.S.C. § 328(c) was based on the independent and adequate finding that KGW was not a disinterested party. *See id.* at 404. KGW appealed to this court.

## II. ANALYSIS

In an appeal of a district court's affirmance of a bankruptcy court's decision, we utilize the same standard of review employed by the district court below: we uphold a bankruptcy court's findings of fact unless clearly erroneous and we review its legal conclusions *de novo. See In re A–1 Paving & Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir.1997); *In re Marrs–Winn Co.*, 103 F.3d 584, 589 (7th Cir.1996); *see also* Fed.R.Bankr.P. 8013. KGW challenges the district court's denial of its compensation request. Because the compensation of professionals in bankruptcy proceedings is a complicated area, we pause to survey the legal landscape before continuing.

A chapter 11 debtor-in-possession like Frank Crivello stands in the shoes of a trustee and acquires the same rights, duties, and responsibilities as a trustee, except as otherwise provided by the Code. *See* 11 U.S.C. § 1107(a). Section 327(a) of the Code provides that

> [e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, ac-

countants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). The Code contains three limited exceptions to this general rule. *See* 11 U.S.C. §§ 327(c), 327(e), 1107(b). None of those exceptions applies in this matter.

■ Section 101(14) of the Code provides the definition of a "disinterested person." In pertinent part, a disinterested person is one who "is not a creditor, an equity security holder, or an insider" and who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest, in the debtor ... or for any other reason." 11 U.S.C. § 101(14)(a), (e). The latter portion of the definition, which is commonly referred to as the "catch-all clause," is sufficiently broad to include any professional with an "interest or relationship that would even faintly color the independence and impartial attitude required by the Code." *In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d Cir.1991) (citing *In re BH & P, Inc.*, 119 B.R. 35, 42 (D.N.J.1990)).

■ The other half of the § 327(a) requirement, the phrase "hold or represent an interest adverse to the estate," is not defined in the Bankruptcy Code. Many courts, however, have adopted the definition of the phrase provided in *In re Roberts*, 46 B.R. 815 (Bankr.D.Utah 1985):

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Id.* at 827; *see also Electro–Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince )*, 40 F.3d 356, 361 (11th Cir.1994); *In re Perry*, 194 B.R. 875, 879 (E.D.Cal.1996); *In re Rivers*, 167 B.R. 288, 301 (Bankr.N.D.Ga.1994); *·In re Rusty Jones, Inc.*, 134 B.R. 321, 342

(Bankr.N.D.Ill.1991). Together, the statutory requirements of disinterestedness and no interest adverse to the estate "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994).

The Code also provides a procedural mechanism to enforce these requirements. Under Fed.R.Bankr.P. 2014, any applying professional must set forth "to the best of the applicant's knowledge" all known connections of the applicant with the "debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee" in both the application for employment and an accompanying verified statement. Fed.R.Bankr.P. 2014(a); *see also* 3 Lawrence P. King *et al.*, *Collier on Bankruptcy* ¶ 327.01[1] (15th rev. ed. 1997). Though this provision allows the fox to guard the proverbial hen house, counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation. *See Rome*, 19 F.3d at 59–60; *In re Martin*, 817 F.2d 175, 182 (1st Cir.1987); *In re Guard Force Management, Inc.*, 185 B.R. 656, 664 (Bankr.D.Mass.1995); *In re Roger J. Au & Son, Inc.*, 71 B.R. 238, 242 (Bankr.N.D.Ohio 1986); *In re Roberts*, 46 B.R. at 847.

Once a bankruptcy court has reviewed the applicant's disclosure statement and affidavit and has determined that the applicant satisfies the standards of § 327(a), the debtor-in-possession may retain that professional.[3] An employed professional must apply to the bankruptcy court for compensation, and the court may award "reasonable compensation for actual, necessary expenses." 11 U.S.C. § 330(a)(1); Fed.R.Bankr.P. 2016(a). Section 328 provides that a court "may deny allowance of compensation" rendered by a professional person employed under 11 U.S.C. § 327:

> if, at any time during such professional person's employment . . . such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c). Thus, § 328(c) provides a penalty for professionals who fail to satisfy § 327(a)'s dual requirements by authorizing the bankruptcy court to deny compensation for services and reimbursement of expenses. *See* 3 *Collier on Bankruptcy* ¶ 328.05[2].

Given this background, we may focus on the case at hand. The issue in this case is not whether KGW was disinterested. KGW concedes to this Court that it was not. Instead, the critical question is whether a bankruptcy court *must* deny fees when it subsequently learns that a professional never should have been employed under § 327(a) in the first place or whether it has *discretion* to deny fees. The United States Trustee argues that a bankruptcy court does not have such discretion, and we should therefore affirm the bankruptcy court's refusal to award fees. KGW contends that the court has discretion to deny compensation under § 328(c), even if the professional was improperly employed. Thus, in an attempt to salvage some of its fees, KGW argues that the bankruptcy court's reliance on inapplicable case law or the bankruptcy court's erroneous findings of fact tainted its exercise of discretion.

## A. Whether a Bankruptcy Court Has Discretion to Deny Fees

The United States Trustee relies on our sister circuit's holding in *Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310 (6th Cir.1995), to argue that a bankruptcy court's decision to deny compensation under § 328(c) "clearly requires a valid professional appointment under § 327(a) as a prerequisite to an award of compensation." *Id.* at 1320. It is undisput-

---

3. In limited instances, courts have compensated professionals who would have been approved as debtor's counsel under § 327(a) but who neglected to file an application because denying all compensation would be an excessive penalty for harmless neglect. *See In re Grabill Corp.*, 983 F.2d 773, 776 (7th Cir.1993).

ed that § 328(c) requires a professional to be employed under § 327(a) before a bankruptcy court may employ discretion. *See* 11 U.S.C. § 328(c). The Trustee argues that because KGW was always interested, it was never "validly" appointed under § 327(a) since KGW could not meet the requirements of that statute. Thus, according to the Trustee, the bankruptcy court did not have any discretion in denying KGW's fees.

In *Michel*, the Sixth Circuit reversed a bankruptcy court's determination under § 327(a) that the debtor-in-possession could employ Lehman Brothers, finding that Lehman Brothers was an interested person from the onset of its employment. *See* 44 F.3d at 1320. In making this decision, the court concluded that Lehman Brothers was never a professional person validly employed under § 327(a) because Lehman Brothers never satisfied the dual requirements of that statute. *See id.; see also In re EWC, Inc.*, 138 B.R. 276, 281 (Bankr.W.D.Okla.1992) (holding that the bankruptcy "court does not have the authority to allow employment of a professional with a conflict of interest" and that "such employment is void *ab initio*"). The Sixth Circuit held that the district court erred in compensating Lehman Brothers under § 328(c) since that provision limits "the bankruptcy court's discretion to grant or deny compensation to a 'professional person employed under § 327.'" *Michel*, 44 F.3d at 1320 (quoting 11 U.S.C. § 328(c)).

### 1.

We reject the Trustee's interpretation of the Code as against the plain language of 11 U.S.C. § 328(c). The Trustee believes that § 328(c) applies *only* when a professional who previously satisfied the dual requirements of § 327(a) becomes either not disinterested or represents or holds an interest adverse to the interest of the estate *after* a bankruptcy court has correctly approved a professional as employable under § 327(a). To reach this result, the Trustee interprets the word "is" in § 328(c) to mean "becomes" and inserts the word "valid" before "employment." But there is no textual or structural evidence to support these limitations. Sec-

tion 328 states that a court "*may* deny allowance of compensation"

> if, *at any time during such professional person's employment* . . . such professional person *is* not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (emphasis added).

A reviewing court may not insert additional language into the Code to conform it with the court's view of bankruptcy law. If a bankruptcy court has the capacity to deny compensation when "at any time during such professional person's employment" that person is not disinterested, then only explicit language in the Code may limit this grant of discretion. Since the Code contains no such language, the bankruptcy court has discretion even if "at any time during . . . employment" refers to the onset of employment. If a bankruptcy court errs in approving a professional person's employment, that person is either "not a disinterested person" or "represents or holds an interest adverse to the interest of the estate" for the entire duration of that person's employment. Under the plain language of the provision, § 328(c) covers questions about whether this erroneously employed professional merits compensation. Thus, a bankruptcy court has discretion in denying that professional's fees. *See Electro–Wire*, 40 F.3d at 359 (reasoning that "the language of 11 U.S.C. § 328(c) *permits* a court to deny compensation to professionals found not to be disinterested persons, but does not *require* a denial of fees"); *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir.1994) ("[W]e interpret [§] 328(c) to mean that if a non-'disinterested' professional person is improperly employed, or if a professional person ceases to be 'disinterested' 'at any time during such professional person's employment,' the court may deny compensation and reimbursement.").

The Trustee suggests that the structure of § 328(c) demonstrates that bankruptcy courts have no discretion in denying fees if the professional person was erroneously employed. We disagree. The fact that a bankruptcy court has discretion in denying

the applicant's compensation is not an indication that courts should limit § 328(c) to situations in which professionals subsequently fail to meet § 327(a) requirements after their approval. Rather, this allocation of power recognizes that bankruptcy courts are courts of equity. *See* 11 U.S.C. § 105(a). It is conceivable that even an interested professional may provide services which are beneficial to the estate. A bankruptcy court should weigh the equities in deciding whether to deny fees under § 328(c), just as it does in deciding to reduce fees under § 329. *See* 11 U.S.C. § 329; *see also In re Wiredyne, Inc.*, 3 F.3d 1125, 1128 (7th Cir.1993). To the extent that the Trustee contests the grant of discretion to a bankruptcy court to deny compensation to professionals who fail § 327(a)'s dual requirements, his argument is not for our ears but for Congress's. *See Gray v. English*, 30 F.3d 1319, 1324 (10th Cir.1994) ("Although there is little indication why Congress made denial of fees in conflict situations discretionary, it appears to be a recognition that a simple denial rule might not be appropriate in modern complex situations.").

Moreover, contrary to the Sixth Circuit's holding in *Michel*, § 328(c) does not require that the professional person be *validly* employed under § 327(a). Section 328(c) simply requires that the professional person be "employed under section 327." 11 U.S.C. § 328(c). This phrase is not an invitation to question collaterally whether, in a world of perfect information, completely forthright counsel, and infallible courts, the bankruptcy court made the correct decision in approving a request to employ professionals. Rather, this phrase is evidence of the Bankruptcy Code's intention to require professionals to apply for employment under § 327 before they may receive compensation. KGW satisfied this prerequisite when the bankruptcy court approved its employment on February 8, 1993. This approval triggered the bankruptcy court's discretion under § 328(c).

### 2.

■ To reach its interpretation, the United States Trustee nullifies the effect of the bankruptcy court's prior approval of KGW's petition for employment. The Trustee assumes that only a correct court order has any effect. *See Michel*, 44 F.3d at 1320 (holding that a "valid appointment under § 327(a) is a condition precedent" to § 328(c)). According to the Trustee's interpretation, an erroneous approval is void *ab initio*. *See EWC*, 138 B.R. at 281.

■ The Trustee confuses an erroneous judgment with a void judgment. A judgment is void, at least for the purposes of Fed. R.Civ.P. 60(b)(4), " 'if the court that rendered it lacked jurisdiction of the subject matter, or one of the parties, or if it acted in a matter inconsistent with due process of law.' " *United States v. Indoor Cultivation Equip. From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316 (7th Cir.1995)(quoting *In re Edwards*, 962 F.2d 641, 644 (7th Cir.1992)). Also, a judgment may be void, even if the court satisfies the above requirements, if it enters a decree "not within the powers granted to it by the law." *United States ex rel. Wilson v. Walker*, 109 U.S. 258, 266, 3 S.Ct. 277, 282, 27 L.Ed. 927 (1883); *see also United States v. Zima*, 766 F.2d 1153, 1159 (7th Cir.1985) (noting that a void judgment exists where a court renders a decision over matters beyond the scope of its authority).

■ A judgment is not void simply because it is erroneous. *See Gober v. Terra & Corp. (In re Gober)*, 100 F.3d 1195, 1202 (5th Cir.1996); *Thomas v. Buster*, 95 F.3d 1449, 1460 n. 17 (9th Cir.1996); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272–74 (2d Cir.), *cert. denied*, 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994); *Edwards*, 962 F.2d at 644; *Simer v. Rios*, 661 F.2d 655, 663 (7th Cir.1981). The bankruptcy court in this case had personal and subject matter jurisdiction over Frank Crivello's bankruptcy. The court acted in a manner consistent with due process in its approval of KGW, which is the decree the Bankruptcy Code specifically grants bankruptcy courts in § 327(a). Thus, the bankruptcy court's approval of KGW as counsel to Crivello was at most an erroneous judgment, not a void one. "[U]ntil it is reversed by orderly and proper proceedings," the fact that the approval was erroneous does not alter its effect. *United States v. United Mine Workers*, 330 U.S. 258, 293, 67

S.Ct. 677, 695–96, 91 L.Ed. 884 (1947); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990); *Bray v. United States*, 423 U.S. 73, 76, 96 S.Ct. 307, 310, 46 L.Ed.2d 215 (1979).

3.

Unlike the Trustee's interpretation, our reading of the Bankruptcy Code ensures symmetry between §§ 327(a) and 328(c) without inserting additional language. The Trustee would like to use § 328(c) to question collaterally whether a professional should be employed. Section 328(c) does not govern whether a court should employ an interested person; § 327(a) provides the Code's response. Our interpretation allows § 327(a) to act prospectively as a prerequisite for employment by signaling those professionals who fail to satisfy its dual requirements that they will be disqualified. Once professionals have cleared that threshold, § 328(c) remains as a retroactive penalty for those professionals whose retention under § 327(a) was improper or who fail to satisfy § 327(a) requirements while working for the estate. *See In re Diamond Mortgage Corp.*, 135 B.R. 78, 89 (Bankr.N.D.Ill.1990). Interpreting the Code in this manner gives full effect to both § 327 and § 328.

4.

Finally, the Trustee attacks the interpretation we adopt as creating an incentive for professionals not to disclose. The duty to disclose under Fed.R.Bankr.P. 2014(a) is unquestionably a self-policing one. *Rome*, 19 F.3d at 59; *EWC*, 138 B.R. at 280. Bankruptcy courts have neither the resources nor the time to investigate the veracity of the information submitted in 2016(b) statements and affidavits and to root out the existence of undisclosed conflicts of interest. The Trustee suggests that professionals will be more willing to roll the dice and not disclose conflicts of interests if they know that a bankruptcy court is not required to deny all fees. Even though we recognize that the Code creates this unintended incentive, we believe that bankruptcy courts can minimize its effects with the appropriate application of their discretion under § 328(c). Before a bankruptcy court elects to award partial payment to a law firm or other professional that was improperly employed, it should consider whether the professional's failure to disclose was intentional. If any evidence exists to support an inference of intent, then the court should not fall prey to the professional's story of confusion, miscommunication, or negligence. We believe a bankruptcy court should punish a willful failure to disclose the connections required by Fed.R.Bankr.P. 2014 as severely as an attempt to put forth a fraud upon the court.

Yet, it is not our role to reduce the discretion the Code affords bankruptcy courts by carving out an exception that requires the denial of fees if a professional willfully fails to disclose. Bankruptcy courts have been given wide latitude in connection with fact-intensive matters, like the terms and conditions of the employment of professionals. *See Casco N. Bank v. DN Assocs. (In re DN Assocs.)*, 3 F.3d 512, 515 (1st Cir.1993). Being on the front line, a bankruptcy judge is "in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." *In re Martin*, 817 F.2d at 182. Section 328(c) requires this discretion in deciding whether the court should deny in whole or in part the fee request of an erroneously employed professional. We refuse any suggestion otherwise.

### B. Whether the Bankruptcy Court's Exercise of Discretion Was Tainted

KGW argues that either an erroneous reliance on inapplicable case law or reliance on erroneous findings of fact tainted the bankruptcy court's exercise of discretion in denying KGW all of its fees. We disagree with KGW's contention that the bankruptcy court improperly relied on inapplicable case law in exercising its discretion. However, we agree with KGW that the bankruptcy court's erroneous findings of fact may have tainted its discretion.

### 1.

KGW points to two of the bankruptcy court's citations as evidence of the court's reliance on bad case law. The first is the court's citation to *Grabill*, 983 F.2d at 773, for the proposition that "[t]he scattered cases ... that allow a lawyer to be compensated who, lacking the requisite disinterest, could not have been appointed seem to us just plain wrong." *Crivello*, 194 B.R. at 466 (citing *Grabill*, 983 F.2d at 777). The second citation is to *Michel*, 44 F.3d at 1319–1320, for the notion that "where a professional is later found not to have been disinterested at the time of appointment, there cannot have been a valid appointment under § 327 and compensation must be denied." *Crivello*, 194 B.R. at 466.

While these references taken out of context suggest that a court does not have discretion in denying fees, they are more innocuous when returned to the context in which the bankruptcy court used them. The bankruptcy court included the challenged citations in a string of citations to support the proposition that a failure to disclose connections may be the basis for the denial of fees and disqualification from further representation. *See id.* We interpret this listing of cases as providing a survey of courts that have addressed this issue.

Contrary to KGW's allegation, the bankruptcy court did not refer to these cases in analyzing whether it should deny all of the requested fees.[4] *See id.* at 467–69. Instead, the bankruptcy court's exercise of discretion was based on the facts of the case. The court detailed the specific circumstances surrounding how KGW's piecemeal disclosure violated the Code's requirements and raised negative inferences about its loyalty to the estate. We have little doubt that the court relied on KGW's actions in exercising its discretion.

Moreover, there is nothing in the court's decision, or the transcript of the court's hearing, which suggests that the bankruptcy court wanted to award fees but felt bound by a *per se* rule requiring denial of compensation. At the hearing on this issue, the court stated that "whether or not the applicant is precluded from receiving compensation or whether the applicant is entitled to compensation is left to the discretion of [the] Court." Hr'g Tr. at 23–24, *In re Crivello*, No. 92–27252 (Bankr.E.D.Wis. Aug. 31, 1995). Also, in its opinion, the court quoted § 328(c) as authorizing it to exercise discretion. *See* 194 B.R. at 466. The court understood that it had discretion in denying fees. As no evidence exists that the court relied on either of these cases in exercising its discretion and substantial evidence shows that the court knew it had discretion and exercised it, we hold that the bankruptcy court's use of these cases did not taint its discretion.

### 2.

KGW also argues that the bankruptcy court's erroneous findings of fact tainted its discretion. In reviewing whether KGW was disinterested, the district court concluded that no support in the record exists for the bankruptcy court's conclusions that KGW attempted to thwart the Code's disclosure requirements and that KGW willfully failed to disclose its prior representation. *See* 205 B.R. at 403–04. The district court then found independent grounds for finding that KGW was not disinterested. *See id.* at 404. As the district court never considered whether the erroneous findings of fact tainted the bankruptcy court's exercise of discretion, we must reverse the district court's decision.

---

**4.** The bankruptcy court did not rely on *Grabill*, 983 F.2d at 773, in deciding whether it should deny KGW's request because *Grabill* did not address a fee request by an improperly employed professional. *Grabill* involved a law firm's attempt to collect fees for services provided to a debtor even though that firm was not disinterested and previously did not receive approval of its employment from the bankruptcy court. *See id.* at 776. This Court affirmed the denial of fees, stressing that the Code authorizes compensation only to professionals employed under 11 U.S.C. § 327(a). *See id.; see also* 11 U.S.C. § 330. *Grabill* remains authoritative for the issue of whether a professional may recover fees without prior approval from the bankruptcy court. The bankruptcy court simply included *Grabill* in its survey of cases as evidence of Seventh Circuit precedent on related issues.

The fact that independent grounds exist for a finding does not relieve a reviewing court from examining whether erroneous findings may have affected a lower court's exercise of discretion. *See* 11 Charles Alan Wright *et al., Federal Practice and Procedure: Civil* § 2883 (2d ed.1995). An exercise of discretion which is based on erroneous findings of fact is an abuse of discretion. *See Gile v. United Airlines, Inc.,* 95 F.3d 492, 495 (7th Cir.1996); *BPS Guard Servs., Inc. v. International Union of United Plant Guard Workers of America, Local 228,* 45 F.3d 205, 209 (7th Cir.1995); *Badger Meter, Inc. v. Grinnell Corp.,* 13 F.3d 1145, 1155 (7th Cir.1994). A district court may affirm a bankruptcy court's exercise of discretion in a case where the bankruptcy court made erroneous findings of fact only after the district court establishes that these findings constituted a harmless error. *See* Fed.R.Bankr.P. 9005; Fed.R.Civ.P. 61.

We believe that nothing would inflame a court's anger more than the belief that a party has intentionally failed to disclose evidence, thereby causing the court to issue an erroneous judgment. KGW's failure to disclose its prior connections to Crivello and its prepetition claims against him at least partially induced the bankruptcy court to authorize Crivello to retain KGW as his counsel. When the court denied KGW any compensation, it thought that KGW willfully failed to disclose information and attempted to thwart the Code's disclosure requirements.

The district court was aware that the record did not support these findings. Yet, it did not consider how they may have impacted the bankruptcy court's decision. We cannot say with any conviction that these erroneous findings did not impact the bankruptcy court's refusal to award any fees. *See Palmacci v. Umpierrez,* 121 F.3d 781, 793 (1st Cir.1997) (confirming the standard for harmless error); *Tully Constr. Co. v. Cannonsburg Env'tl Assocs. (In re Cannonsburg Env'tl Assocs.),* 72 F.3d 1260, 1264 (6th Cir. 1996) (same); *Hart Env'tl Management Corp. v. Sanshoe Worldwide Corp. (In re Sanshoe Worldwide Corp.),* 993 F.2d 300, 305 (2d Cir.1993) (same). We, therefore, cannot affirm the decision of the district court.

## C.

For the foregoing reasons, we REVERSE the district court and REMAND the case to the bankruptcy court for a new hearing on whether KGW merits any compensation under 11 U.S.C. § 328(c).