**In re AUTHORIZED FACTORY SERVICE, INC., a/k/a AFS, Debtor.**

**No. 01–20356–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 8, 2002.

685

Robert A. Cohen, Pittsburgh, PA, for James E. Moody, CPA, Moody & Associates, Inc.

Robert O Lampl, Pittsburgh, PA, for objector/debtor.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

James E. Moody, accountant and management consultant to debtor Authorized Factory Service ("AFS"), has submitted an application for compensation in the amount of $28,602.50 and for reimbursement of expenses in the amount of $306.58. Included in the requested compensation is $4,500.00 in interim payments Moody previously received from debtor during his

tenure as its accountant and management consultant.

Debtor has objected to the application, contending that the amount requested is excessive.

We will award Moody compensation in the amount of $4,500.00—i.e., the amount of interim compensation he previously received from debtor—and will otherwise deny his application for reasons set forth below.

## – FACTS –

Debtor is in the business of repairing restaurant equipment under warranty by various manufacturers. It also repairs equipment no longer under warranty.

Joseph and Carol Palumbo were debtor's principals and sole shareholders. Joseph Palumbo was debtor's CEO until he died during debtor's bankruptcy proceeding.

James Moody is a seasoned veteran in this court. He has served as chapter 7 trustee in innumerable cases and as accountant to the debtor or trustee in innumerable others.

Joseph Palumbo retained Moody in mid-December of 2000 to serve as debtor's accountant and management consultant. Among other things, debtor was having cash flow problems and owed the Internal Revenue Service approximately $1,000,000.00 in unpaid payroll taxes at the time of his retention.

Debtor filed a voluntary chapter 11 petition on January 12, 2001. Although debtor owed Moody for his pre-petition services, he was not listed as a creditor on its schedules.

An application was filed on January 19, 2001, to retain Moody and his firm as debtor's accountant and management consultant. Among other things, the application specified that Moody would receive interim payments each month from debtor in the amount of $1,500.00 for services rendered. Paragraph 5 of the application stated that Moody and his firm had no connection with debtor and did not represent "any interest adverse to the Debtor or any other party-in-interest". The application made no mention that Moody was a pre-petition creditor for work he had done on behalf of debtor in the month prior to the bankruptcy filing.

The application to retain Moody and his firm as accountant and management consultant to debtor was granted on February 21, 2001.

Joseph Palumbo became grievously ill shortly after debtor filed its chapter 11 petition and was admitted to a hospital on January 23, 2001. An MRI revealed a hematoma at the base of his brain.

He was discharged from the hospital the first time on January 28, 2001, after undergoing treatment. Because of the severity of his ailment Carol Palumbo, Joseph Palumbo's wife, transported him when he left the house after the discharge. He stopped at debtor's office a few times in the company of his wife and on one occasion stayed for approximately three hours.

Joseph Palumbo was admitted to the hospital a second time on February 6, 2001. He was discharged on February 13, 2001, after undergoing treatment.

His condition steadily worsened after the second discharge. He was unable to work and left the house only to go to therapy. He did not go to debtor's office. Because his speech was slurred his wife answered all telephone calls and acted as his intermediary.

Joseph Palumbo was admitted to the hospital for the third and final time on February 26, 2001. Brain surgery was performed on March 5, 2001, after a brain

lesion was detected. He never recovered and died on March 13, 2001.

Moody filed a proof of claim in the amount of $3,080.00 on March 7, 2001, for services he had provided to debtor prior to the filing of debtor's chapter 11 petition and for which he had not been paid.

Moody's relationship with debtor's employees after the filing of the bankruptcy petition was stormy at best. Anthony Palumbo, debtor's CFO and the brother of Joseph Palumbo, was fired by Moody during the last week of January of 2001. Mike Rayberg, debtor's general manager and second in command, was informed by Moody late in January of 2001 that he too would be fired. Rayberg resigned before he was fired and went to work for one of debtor's competitors around February 10, 2001. Rayberg's departure proved costly for debtor. Several of debtor's most lucrative accounts left and followed Rayberg when he went to work for debtor's competitor. Only one of these accounts ever returned to debtor.

William Hufnagel, son-in-law of Joseph and Carol Palumbo, took over as debtor's CEO on March 15, 2001, two days after Joseph Palumbo died. With the blessing of Carol Palumbo, one of his first moves after becoming CEO was to fire Moody and his firm as debtor's accountant and management consultant. When Hufnagle asked Moody how much debtor owed him for his services, Moody told him $1,500.00 and said "That's all you owe me". That same day debtor issued a check in the amount of $1,500.00 payable to Moody, who promptly cashed it.

Debtor's motion to retain another accountant and management consultant was granted on May 22, 2001.

On July 31, 2001, debtor filed a disclosure statement and plan of reorganization.

The disclosure statement was approved on January 7, 2002.

On February 1, 2002, Moody submitted an application for final compensation in the amount of $28,602.50, which amount included the interim payments Moody previously had received from debtor during his tenure as its accountant and management consultant, and for reimbursement of expenses in the amount of $306.58. Debtor subsequently objected to the application.

Debtor's amended chapter 11 plan of reorganization was confirmed on February 28, 2002. Its bankruptcy case was closed shortly after issuance of a final decree on June 18, 2002.

A hearing on Moody's application for compensation and for reimbursement of expenses and debtor's opposition thereto was conducted on August 14, 2002, at which time both Moody and debtor were given an opportunity to offer evidence.

– DISCUSSION –

Excluding interim payments totaling $4.500.00 he received from debtor during his three-month tenure as its accountant and management consultant, Moody requests compensation in the amount of $24,102.50 for his services plus reimbursement of expenses totaling $306.58. Moody alleges that he personally provided 126.8 hours of services at the hourly rate of $175.00 and that an employee of his firm provided another 47.5 hours of services at the hourly rate of $135.00.

Subject to bankruptcy court approval, a trustee (or a debtor-in-possession) may employ one or more accountants or other professionals to assist the trustee (or debtor-in-possession) in carrying out his or her (or its) duties under the Bankruptcy Code, provided that they do not hold an interest that is adverse to the bankruptcy estate

and are "disinterested" persons. 11 U.S.C. § 327(a).

Among other things, a "disinterested person" must be a person that is not a creditor. 11 U.S.C. § 101(14)(A).

"Person" includes, among other things, an individual. 11 U.S.C. § 101(41).

Any entity having a claim against debtor that arose at the time of or before the order for relief concerning the debtor is a "creditor". 11 U.S.C. § 101(10)(A).

A "claim" includes, among other things, a right to payment, without regard to whether it is reduced to judgment, is liquidated or unliquidated, is fixed or contingent, is matured or unmatured, is disputed or undisputed, and is secured or unsecured. 11 U.S.C. § 101(5)(A).

 Taken together, these provisions unambiguously (and categorically) *prohibit* a debtor-in-possession from retaining a pre-petition creditor as a professional to assist debtor in carrying out its duties under the Bankruptcy Code. *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir.1994).

 Moody, who filed a proof of claim in this case, was a pre-petition creditor of debtor, which owed him approximately $3,000.00 for services he allegedly provided during the one-month period immediately preceding the filing of debtor's chapter 11 petition. He was *not* a "disinterested person", as is required by § 327(a) of the Bankruptcy Code. The order of February 21, 2001, approving Moody's employment as accountant and management consultant to debtor was improperly issued. Had we known at the time that Moody was not a disinterested person, we would not have authorized his retention to serve as debtor's accountant and management consultant.

After notice and a hearing, and subject to §§ 326, 328, and 329 of the Bankruptcy Code, a bankruptcy court may award a professional person employed in accordance with § 327 reasonable compensation for actual, necessary services and expenses. 11 U.S.C. § 330(a)(1).

On its own motion or on motion by the United States trustee, the trustee for the estate, or any other party-in-interest, the court may award less compensation that an applicant requests. 11 U.S.C. § 330(a)(2).

When considering the amount of reasonable compensation to award, we must consider the nature, extent, and value of the services provided, taking all relevant factors into account. Relevant factors include: (1) the time spent in providing such services; (2) the rate charged for such services; (3) whether the services were necessary to the administration of the bankruptcy estate or were beneficial at the time rendered toward completion of the case; and (4) whether the compensation requested is reasonable based on what a comparably skilled non-bankruptcy practitioner would charge for similar services. 11 U.S.C. § 330(a)(3)(A).

The question arises whether, notwithstanding the order of February 21, 2001, authorizing his retention, Moody may be compensated for services he provided debtor after debtor filed its chapter 11 petition.

Section 328(c) of the Bankruptcy Code provides in part as follows:

... [T]he court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section, 727 ... of this title if, at any time during such professional person's employment under

section 727 ... of this title, such person is not a disinterested person....

11 U.S.C. § 328(c).

It is undisputed that § 328(c), when it applies, grants a bankruptcy court discretion to deny compensation to a professional who ceases to be disinterested subsequent to their appointment. Our situation, however, is different from this scenario in that a professional's appointment was improper at the outset because the professional was not a disinterested person at the time of their appointment.

Courts are in disagreement concerning whether, as here, a professional person who was improperly employed in accordance with § 327(a) at the outset because they were not disinterested at the time of the order approving their retention can be compensated at all for services they provided on behalf of the bankruptcy estate.

At least one court of appeals of which we are aware has held that, notwithstanding the seemingly unambiguous language of § 328(c), a bankruptcy court lacks discretion to award compensation to an improperly appointed professional person. Section 328(c), it held, does not apply to a professional person whose appointment was improper at the outset because they were not disinterested at the time of their appointment pursuant to § 327. Section 330, not § 328(c), controls and requires a *valid* appointment under § 327 as a prerequisite to any award of compensation. *Michel v. Federated Department Stores, Inc. (In re Federated Department Stores, Inc.)*, 44 F.3d 1310, 1319–20 (6th Cir.1995).

At least one other court of appeals has arrived at the opposite conclusion and has held that § 328(c) applies even though a professional was not validly appointed at the outset because they were not disinterested when the order approving their retention was issued. A bankruptcy court has discretion under § 328(c) to award compensation to a professional who was "employed under § 327" even if their appointment was improper from the outset. *Kravit, Gass & Weber v. Michel (In re Crivello)*, 134 F.3d 831, 836–38 (7th Cir. 1998).

As far as we aware, the Third Circuit has not squarely considered and addressed the issue presently before us. Remarks appearing in the *Price Waterhouse* case, however, lead us to conclude that, if it had to decide the issue, the Third Circuit would embrace the holding of *Crivello* over the holding in *Federated Department Stores*.

In rejecting the assertion that the word "may" appearing in § 328(c) indicates that § 327(a) does not categorically bar appointment of a professional who is not disinterested, the court stated as follows:

> Section 328(c) does not authorize the employment of a professional person who is not "disinterested." Instead, we interpret Section 328(c) to mean that if a non-"disinterested" professional person is improperly employed, or if a professional person ceases to be "disinterested" "at any time during such professional person's employment," the court may deny compensation and reimbursement. Consequently, we do not believe that Section 328(c) creates any ambiguity concerning the meaning of Section 327(a).

*Price Waterhouse*, 19 F.3d at 142.

The language of this passage strongly suggests that § 328(c) applies to professionals whose employment under § 327(a) was improper or invalid at the outset as well as to professionals whose employment initially was proper and became invalid later on because the professional subsequently became disinterested.

■ We adopt this position in this case even if the above passage from *Price Waterhouse* does not so bind us. In our estimation, the argument set forth in *Crivello* in support of the proposition that a court has discretion under § 328(c) to award compensation to a professional person whose appointment was improper from the outset is far more persuasive than the argument in support of the opposite conclusion set forth in *Federated Department Stores.* The former holding is supported by the language and structure of § 328(c) whereas the latter holding runs roughshod over them. *Crivello,* 134 F.3d at 837–38.

Based on the foregoing, we conclude that we have discretion to award Moody compensation for his services and reimbursement of his expenses even though his appointment under § 327(a) was improper from the very beginning.

■ There is no *per se* rule that we must deny compensation to a professional who was not disinterested at the time their appointment was approved. As we have just recited above, we have discretion in the matter. In exercising this discretion, however, a court should "lean strongly" in favor of denying compensation. *Gray v. English,* 30 F.3d 1319, 1324 (10th Cir. 1994).

■ Except for the interim payments totaling $4,500.00 debtor made to Moody during his tenure as its accountant and management consultant while it was in bankruptcy, we conclude for various reasons that Moody's request for compensation and for reimbursement of expenses should be denied.

To begin with, we have no doubt that Moody's failure to disclose in the motion seeking his retention as debtor's accountant and management consultant that he was a pre-petition creditor of debtor was knowing and intentional. Moody, we pre-viously noted, is not a novice in this court. Over the past two decades or so he has been retained as a professional in innumerable cases before the various judges of this court. It defies belief that he did not know of the requirement that he be disinterested and that we would not approve his retention had he disclosed his pre-petition claim against debtor. We have little doubt that Moody, armed with this knowledge, intentionally did not disclose the existence of his pre-petition claim because he wanted to be retained in this case so that he could request, and hopefully receive a substantial fee.

It is not on this basis alone that we will deny Moody's application for compensation except for the interim payments totaling $4,500.00 debtor paid him during his tenure as debtor's accountant and management consultant during the bankruptcy case.

■ Even an interested professional whose retention was improper from the outset may confer a benefit on the bankruptcy estate. Section 328(c) of the Bankruptcy Code recognizes this and leaves open the possibility that a professional whose retention was improper nonetheless may be compensated for beneficial services they conferred. We should "weigh the equities" in deciding whether to award fees under § 328(c), just as we do when deciding whether to reduce compensation under § 329. *Crivello,* 134 F.3d at 838.

Our review of the testimony offered at the evidentiary hearing leads us to conclude that there is no sound basis for concluding that Moody conferred much of a benefit on debtor's bankruptcy estate.

In the first place, we are convinced that Moody's time records are not a reliable indicator of what he did in this case. For instance, many of the meetings Moody allegedly had with Joseph Palumbo could

have not have taken place as his time records indicate because Joseph Palumbo either was too ill to have met with Moody or was in the hospital. Moreover, other employees with whom Moody claims to have met credibly testified under oath that such meetings never occurred. These "phantom" meetings listed on Moody's time records undermine our confidence in their accuracy and veracity and give rise to serious doubt concerning the extent to which they indicate that Moody conferred any benefit on debtor's bankruptcy estate.

Moreover, there is credible evidence indicating that some of Moody's actions were in fact deleterious to the bankruptcy estate. For instance, Mike Rayberg, debtor's general manager and second in command, resigned when Moody let it be known that he intended to terminate him. Some of debtor's most lucrative accounts walked out the door with Rayberg and followed him when he went to work for one of debtor's competitors. The result for debtor was a substantial and permanent loss of revenue. Also, Moody's heavy-handed treatment of debtor's employees in general seriously undermined employee morale and adversely affected their willingness to make debtor's successful reorganization a reality.

Finally, when Moody was asked by William Hufnagle when he terminated Moody what debtor owed him for his services, Moody replied that all debtor owed him was $1,500.00, which debtor promptly paid him. This seriously undermines Moody's contention that debtor owed him in excess of $28.000.00 for his services.

In spite of all this, we conclude that Moody's activities were not altogether deleterious to the bankruptcy estate and that he did confer a modicum of benefit upon the bankruptcy estate. We are satisfied that the $4,500.00 in interim payments debtor made to Moody during his tenure as debtor's accountant and management consultant reasonably compensates him for services he provided after he was improperly approved to serve in these capacities.