# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 29, 2012

Lyle W. Cayce
Clerk

No. 11-30462

In the Matter of:  AMERICAN INTERNATIONAL REFINERY,
INCORPORATED; AMERICAN INTERNATIONAL PETROLEUM
CORPORATION,

Debtors

------------------------------------------------------------------------------------------

ROBBYE R. WALDRON,

Appellant

v.

ADAMS & REESE, L.L.P.,

Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

BENAVIDES, Circuit Judge:

This case is an adversary proceeding arising out of the Chapter 11 bankruptcy of American International Petroleum Company ("AIPC") and American International Refinery, Inc. ("AIRI") (collectively the "debtors"). Appellant Robbye R. Waldron, the Liquidating Trustee of the AIPC Liquidating Trust (the "Trustee"), filed suit against Appellee Adams & Reese, LLP ("A&R"),

the former debtors' counsel, seeking disgorgement of the attorney's fees awarded during the bankruptcy. After a bench trial, the bankruptcy court ordered a sanction of $135,000 for A&R's failure to adequately disclose various connections it had to the debtors and creditors, but it found that A&R did not have a disqualifying adverse interest. The Trustee appeals, arguing that A&R was not disinterested and that all legal fees should have been disgorged. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of its bankruptcy, AIPC was a public corporation, with various affiliates and subsidiaries, including: AIRI, wholly owned by AIPC; St. Mark's Refinery, wholly-owned by AIPC; American International Petroleum Kazakhstan ("AIPK"), also wholly-owned; and Caspian Gas Corporation ("CGC"), partially owned. AIPC refined, produced, and marketed oil and engaged in oil and gas exploration in Kazakhstan. Through AIPK and CGC, one of AIPC's principal assets was a gas concession in the Shagyrly-Shomyshty gas field, located in Kazakhstan, called License 1551. At the time of its bankruptcy, the debtors' largest creditors were GCA Strategic Investment Fund Limited ("GCA") and Halifax Fund, L.P. ("Halifax").

In January 2004, in a transaction that forms a basis for part of the Appellant's claims against A&R, AIPK sold eighty-five percent of its interest in License 1551 to Bridge Hydrocarbons, LLC ("Bridge"), for approximately $5 million. A substantial portion of this sum was used to pay back-wages and benefits to AIPC's officers.[1] In connection with the Bridge transaction, GCA executed a consent agreement with AIPC, in which it agreed to release a security interest it held in AIPK's shares. On December 11, 2003, however, GCA sent a

---

[1] A&R acted as a neutral escrow agent for the Bridge transaction, although it did not represent either party and was eventually replaced by another law firm. Soon after completion of the Bridge transaction, A&R provided legal advice to AIPC on the accounting treatment of the payments AIPC had made to its officers.

2

letter to AIPC indicating that its release was subject to certain conditions. Even though these conditions never occurred, the Bridge transaction was still completed, and it is not clear if GCA effectively retained a security interest in AIPK's shares. In exchange for releasing its security interest, GCA was supposed to have received substitute collateral from AIPC in the form of an assignment of dividends payable from CGC to AIPK. The assignment was not executed prior to the closing of the Bridge transaction. During pre-bankruptcy petition negotiations between GCA and the debtors, A&R drafted the dividend assignment agreement (the "Dividend Assignment") between AIPC and GCA. Although the Dividend Assignment was not executed until after the filing of the debtors' bankruptcy petition, it was backdated to the date of the Bridge transaction. A&R never disclosed its role in drafting the Dividend Assignment to the bankruptcy court.

AIPC engaged A&R to assist in its restructuring in early 2004.[2] In this role, A&R represented AIPC during the negotiations of an agreement with GCA (the "lock-up agreement."). The lock-up agreement provided that GCA would vote in favor of the bankruptcy plan that the debtors intended to propose, so long as GCA's claims were treated as set forth in the agreement. The lock-up agreement was never fully executed and the final bankruptcy plan was not based on the lock-up agreement's terms.

In fall 2004, AIRI and AIPC filed for bankruptcy in the Western District of Louisiana in the same proceeding. The debtors continued to retain A&R as bankruptcy counsel, an appointment that was approved by the bankruptcy court. One of the transactions that the Trustee also claims created a disqualifying conflict involves AIPC's payment of its bankruptcy retainer. Because AIPC did not have adequate cash to pay a retainer, AIPC management sought out a

---

[2] Prior to its bankruptcy, AIPC had been A&R's client on a variety of matters.

different source of funding. An arrangement was reached, with A&R's knowledge, whereby GCA loaned St. Mark's Refinery—a wholly-owned subsidiary of AIPC—$200,000 in exchange for a security interest in the sale of some real estate. As part of the transaction, GCA wired the retainer funds directly to A&R, with a notation indicating they were paid on behalf of the debtors. A&R's retention application to the bankruptcy court did not disclose the source of its retainer.

The bankruptcy action involved conflict over the treatment of GCA's secured claims. The Equity Security Holders Committee (the "Equity Committee") objected to the various bankruptcy plans filed by the debtors, largely on the ground that the plans treated GCA's claims too favorably. Ultimately, in March 2006, the Equity Committee and GCA reached a settlement. The settlement was confirmed by the bankruptcy court and it provided for full payment of all secured and unsecured claims and a distribution to equity holders.[3] A&R was awarded $678,936.25 in fees and $63,100.67 in costs. A&R did not, however, disclose GCA's payment of the initial retention fee to the court in its three separate applications for compensation.

The current adversary proceeding was filed in September 2006 by the Trustee.[4] In December 2006, after A&R disclosed that GCA paid its initial retainer fee, the Trustee filed an amended complaint adding claims for disgorgement and punitive damages for willful misconduct.[5] The bankruptcy court granted a motion for partial summary judgment, and it dismissed the

---

[3] AIPC and A&R had no involvement in the negotiation or terms of the final settlement.

[4] At the time of the filing of the current adversary proceeding, the Trustee was Jason Searcy. Searcy was later replaced by Robbye Waldron, the current liquidating Trustee. We simply refer to both individuals as the Trustee and do not distinguish between them unless it is relevant to the analysis.

[5] The complaint originally asserted claims for fraudulent and preferential transfer claims under 11 U.S.C. §§ 547, 548, and 550 against A&R, seeking avoidance and damages.

No. 11-30462

Trustee's claims for willful misconduct.  The Trustee later filed a second amended complaint, limiting the action to one for disgorgement.  Subsequently, the Trustee filed a motion for leave to file a third amended complaint, seeking to add claims for fraud, fraudulent inducement, conspiracy, and breach of duty against A&R.  The claims centered on A&R's decision not to dispute GCA's secured claims.  The bankruptcy court denied in part and granted in part the motion, allowing the breach of duty claim, but not the fraud-based claims.  The bankruptcy court later granted a motion for partial summary judgment, dismissing the breach of duty claim.  Thus, only the disgorgement claim remained pending for trial.

The bankruptcy court held a three-day bench trial and issued a memorandum ruling and judgment, finding: (1) that A&R did not have a disqualifying adverse interest; (2) that A&R, nonetheless, failed to make adequate disclosures of its connections to the debtors and to GCA; and (3) that a disgorgement of $135,000 was a proper sanction for the disclosure violations.  The bankruptcy court denied all other relief.[6]  On appeal to this Court, the Trustee argues that the bankruptcy court's decision should be reversed because A&R was not disinterested, that all fees must therefore be disgorged, and that the bankruptcy court also abused its discretion by denying the motion to file a third amended complaint.

## II. STANDARD OF REVIEW

"This court reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Scopac*, 624 F.3d 274, 279–80 (5th Cir. 2010) (citing *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009)).  The factual findings of the bankruptcy court are

---

[6] On appeal, the district court upheld the bankruptcy court's decision in its entirety.

reviewed for clear error and its conclusions of law are reviewed de novo. *Id.* "[The court's] finding of fact may be reversed only if the reviewing court has the definite and firm conviction that a mistake has been made." *Id.* (quotation marks omitted). A bankruptcy court's decision to disgorge fees or impose a sanction is reviewed for abuse of discretion. *In re West Delta Oil Co.*, 432 F.3d 347, 358 (5th Cir. 2005); *In re Prudhomme*, 43 F.3d 1000, 1003–04 (5th Cir. 1995). A denial of a motion for leave to amend is also reviewed for abuse of discretion. *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010).

### III. ANALYSIS

### A. Disqualifying Conflict of Interest

On appeal, the Trustee's central argument is that the bankruptcy court erred in finding that A&R did not have a disqualifying interest. Specifically, the Trustee argues that A&R was not disinterested: (1) because GCA paid the bankruptcy retainer; (2) because of A&R's relationship with GCA; and (3) because A&R advised AIPC on how to characterize payments made to officers and directors several months prior to filing the bankruptcy petition.

The Bankruptcy Code requires that a professional retained by the debtor in possession not "hold or represent an interest adverse to the estate," and that the professional be "disinterested." 11 U.S.C. § 327(a); *In re W.F. Dev. Corp.*, 905 F.2d 883, 884 (5th Cir. 1990). The term "disinterested" is defined in 11 U.S.C. § 101(14) as a person (1) who "is not a creditor, an equity security holder, or an insider," (2) who "is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor," and (3) who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14); *W.F. Dev. Corp.*, 905 F.3d at 884. A party has an "adverse interest" to the estate if they: "(1) [ ] possess or assert any economic

interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) [] possess a predisposition under circumstances that render such a bias against the estate." *West Delta Oil*, 432 F.3d at 356 (quotation marks omitted); *see also In re AroChem Corp.*, 176 F.3d 610, 623 (2d Cir. 1999) (same); *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998) (same).[7] The determination of an adverse interest must be made "with an eye to the specific facts of each case." *West Delta Oil*, 432 F.3d at 356. The standards for finding a conflict are "'strict'" and "attorneys engaged in the conduct of a bankruptcy case 'should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.'" *West Delta Oil*, 432 F.3d at 355 (quoting *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 & n.6 (5th Cir. 1986)).

Under Section 328(c), "[a] court may deny compensation for services provided by an attorney who holds such an adverse interest." *West Delta Oil*, 432 F.3d at 354–55; 11 U.S.C. § 328(c). A bankruptcy court is not required, however, to deny all compensation if an attorney has an adverse interest and is found to not be disinterested. *West Delta Oil*, 432 F.3d at 355 n.22 (explaining that the rule is flexible because a bankruptcy court is one of equity); *In re Prince*, 40 F.3d 356, 359–60 (11th Cir. 1994) (same); *Gray v. English*, 30 F.3d 1319, 1324 (10th Cir. 1994) (same).

As noted, the Trustee argues that A&R was not disinterested based on three different grounds. Two of these grounds focus on A&R's connections to

---

[7] The "adverse interest" term in Section 327(a) is generally considered to have the same meaning as the "adverse interest" term in Section 101(14). *See, e.g.*, *West Delta Oil*, 432 F.3d at 356 (stating the phrases as having the same meaning); *In re WorldCom, Inc.*, 311 B.R. 151, 164 (Bankr. S.D.N.Y. 2004) (stating the two definitions form a "single test to judge conflicts").

No. 11-30462

GCA and we will consider them together. The most troubling aspect of A&R's relationship to GCA is obviously GCA's payment of the bankruptcy retainer. Courts have taken two approaches when deciding if payment of a bankruptcy retainer by a third-party is a disqualifying interest. Some courts have found that payment of a retainer by a third party is a per se disqualification, while other courts have held that the totality of the circumstances surrounding the retainer payment must be scrutinized before deciding if a disqualifying conflict exists. *See In re Lotus Props. LP*, 200 B.R. 388, 391–96 (Bankr. C.D. Cal. 1996) (explaining both approaches).

Although we have not formally adopted a test in this Circuit, we find that the per se approach is inconsistent with our decision in *West Delta Oil*. In that decision, we stated that the existence of a conflict should be determined "with an eye to the specific facts of each case." *West Delta Oil*, 432 F.3d at 356; *see also In re Harold & Williams Dev. Co.*, 977 F.2d 906, 909–10 (4th Cir. 1992) (stating that judicially created per se rules for disqualifications are usually not appropriate).[8] Thus, we now adopt the totality of the circumstances approach for deciding whether third-party payment of a retainer creates a disqualifying interest.[9]

---

[8] *See also In re Rabex Amuru of N.C., Inc.*, 198 B.R. 892, 895–96 (Bankr. M.D.N.C. 1996) (stating that per se rule regarding retainer payment conflicts with notion that an adverse interest is supposed to be a case-specific determination).

[9] *See In re 7677 E. Berry Ave. Assocs., L.P.*, 419 B.R. 833, 844 (Bankr. D. Colo. 2009) (adopting totality test and characterizing it as the majority approach); *Lotus Props.*, 200 B.R. at 392–95 (adopting totality approach); *In re Mo. Mining, Inc.*, 186 B.R. 946, 948–50 (Bankr. W.D. Mo. 1995) (same); *In re Kelton*, 109 B.R. 641, 644–58 (Bankr. D.Vt. 1989) (same). Some of the cases applying the totality approach set forth specific multi-factor tests to be used when judging if the retainer payment rises to the level of a disqualifying interest. *See, e.g.*, *Kelton*, 109 B.R. at 658 (stating multi-factor test); *Missouri Mining*, 186 B.R. at 949 (same) (citing *In re Olson*, 36 B.R. 74, 76 (D. Neb. 1983)). We decline to adopt a particular test, and instead, more generally instruct, consistent with *West Delta Oil*, that all of the circumstances of the representation must be considered.

No. 11-30462

The Trustee cites a number of actions taken by A&R that it argues shows that A&R felt loyalty to GCA due to the retainer. We will analyze each of these occurrences. First, the Trustee argues that A&R's role in negotiating the pre-petition lock-up agreement shows A&R's loyalty to GCA. It is undisputed that A&R acted as the debtors' counsel during the pre-petition negotiations with GCA. It is not clear, however, how A&R's role in this negotiation evidences any divided loyalties. It is common for a law firm to help its client negotiate a pre-petition agreement with a creditor and the bankruptcy process encourages such voluntary settlements.

The Trustee also argues that A&R believed that it was bound by the retainer payment to favor GCA's claims. Loyalty to a third-party due to the payment of a retainer would obviously render a party not disinterested. *See In re Big Rivers Elec. Corp.*, 355 F.3d 415, 434 (6th Cir. 2004) (stating that a professional would not be disinterested if payment by creditor was linked to providing favorable result to that creditor). There is some evidence in the record showing that A&R discussed submitting bankruptcy plans that were favorable to GCA. However, the evidence supporting the Trustee's contentions on this point can also be interpreted as simply showing that A&R was aware that confirmation of a plan would require GCA's support, and that the proposed plan must, therefore, be acceptable to GCA. The bankruptcy court found that the record more fairly supported this legitimate inference. We are in a poor position to second-guess that factual judgment, and we now hold that this factual finding is not clear error. *United States v. Casteneda*, 951 F.2d 44, 47 (5th Cir. 1992) (stating that where "two permissible views of the evidence are presented, the district court's choice between them cannot be clearly erroneous.").

Third, the Trustee argues that A&R's divided loyalties are evidenced by its decision not to litigate GCA's secured claim. GCA's secured claim was based on its lien on AIPK's shares and on the assignment of CGC dividends from AIPK.

9

No. 11-30462

Although there are grounds for questioning A&R's decision on this point, the testimony at trial indicated that A&R considered whether to dispute these claims and decided that the costs of litigation were not in the best interests of the estate, particularly given that the debtors were already litigating Halifax's claims. In its analysis, the bankruptcy court considered the same arguments as are currently presented on appeal, and it found that there was no evidence that A&R's decision was affected by loyalty to GCA. Again, this factual finding is supported by evidence in the record and it is, therefore, not clearly erroneous. *See Fairley v. Hattiesburg, Miss.*, 584 F.3d 660, 673 (5th Cir. 2009) ("'If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse . . .'" (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)).

Finally, and most suspiciously, the Trustee offers evidence showing that A&R drafted a motion for relief from stay on behalf of GCA during the bankruptcy. The bankruptcy court found, however, that this letter did not evidence any favoritism or loyalty to GCA. Instead, the bankruptcy court credited testimony from Dean Ferguson, who was A&R's lead attorney on the bankruptcy, that A&R prepared the draft as part of a strategy to help overcome a stalemate in negotiations between GCA and the Equity Committee. Even though the circumstances surrounding the drafting of this motion are strange, we again hold that the bankruptcy court's factual findings on this issue are not clearly erroneous. Ferguson's explanation for the drafting is reasonable, and the bankruptcy court did not err in crediting his testimony on this point. *See Fairley*, 584 F.3d at 673. Thus, we find that this evidence does not show that A&R's loyalty to the debtors was compromised.

Overall, given the factual findings made below, we agree with the bankruptcy court that GCA's payment of the retainer did not create an adverse interest or show that A&R was not disinterested. The facts of this case are not

nearly as egregious as those in *West Delta Oil*, where we found that special counsel for the debtor had an adverse interest because they were actively plotting to harm the estate for their own benefit. 432 F.3d at 357–58. In that case, the attorneys for the debtor attempted to surreptitiously purchase the debtor though an outside investor, while also suppressing other bids to artificially depress the purchase price. *Id.* at 349–53. We held that disgorgement of all fees was required due to the profound nature of the conflict. *Id.* at 358. While some of the actions of A&R appear suspicious, this case does not present a totality of the circumstances as egregious as *West Delta Oil*, and we agree with the bankruptcy court that the relationship between GCA and A&R does not rise to the level of a disqualifying conflict requiring the disgorgement of fees. *See AroChem*, 176 F.3d at 628 (stating that a bankruptcy court's conclusions on a conflict of interest should be accorded deference); *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987) (same). Here, unlike in that case, there is no evidence that A&R took action contrary to the interests of the estate or gave legal advice that was colored by loyalty to a third party. Accordingly, we decline to reverse the bankruptcy court's ruling on this issue.

In addition to A&R's relationship to GCA, the Trustee separately argues that A&R possessed a disqualifying interest because of its previous representations of the debtors. Specifically, the Trustee argues that A&R's role in the Bridge transaction prevented it from offering objective legal advice to the debtors. The bankruptcy court found that A&R did not have a conflict because A&R's role in these transactions was limited to a neutral escrow agent.

In January 2004, AIPK transferred eighty-five percent of its shares of CGC to Bridge in exchange for $5 million. A significant portion of the sale price was used to pay the wages and benefits of AIPC's officers. The bankruptcy court's determination that A&R's role was limited to a neutral escrow agent is incorrect based on the testimony at trial. Rather, the testimony showed that A&R, in

addition to acting as an escrow agent, also advised AIPC on the accounting treatment of these payments, and counseled AIPC that the payments should be labeled "retention payments for future services."  Given this factual error, we must now, therefore, determine whether A&R's legal advice on these payments created a disqualifying conflict.

Although under Section 1107(b) of the bankruptcy code, a professional "is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case," 11 U.S.C. § 1107(b), courts have held that the nature of the representation can still create a disqualifying conflict under Section 327(a), such as where the attorney may be required to review his own legal work in the course of the bankruptcy action.  *See, e.g.*, *In re Ressler Hardwoods & Flooring, Inc.*, 2010 WL 2342497, at *6–7 (Bankr. M.D. Pa. June 8, 2010); *In re Granite Sheet Metal Works, Inc.*, 159 B.R. 840, 841–49 (Bankr. S.D. Ill. 1993).  We agree with these cases that earlier legal work can require disqualification of counsel under certain circumstances.  *See West Delta Oil*, 432 F.3d at 355 (stating that an attorney should be free from the "slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them . . . ." (quotation marks omitted)).

Although recognizing such conflict is possible, we do not think that the record supports finding one here.  As noted by the Trustee, the wages and benefits paid to AIPC's officers and directors may have been avoidable because they were paid close in time to the bankruptcy filing.  Nonetheless, the Trustee points to no evidence in the record indicating that A&R's advice on the treatment of these claims was clouded.  Instead, the record shows that A&R counseled against disputing these claims because, in its judgment, the potential benefit to the estate was outweighed by the expense of litigating the claims.  Although

obviously not ideal or best practice, A&R's previous relationship to the debtors is also insufficient to constitute a disqualifying interest.

### B.  Sanction for Failure to Make Adequate Disclosures

The Trustee also challenges the bankruptcy court's ruling that $135,000 was an appropriate sanction for A&R's violation of Bankruptcy Rule of Procedure 2014(a).  After finding that there was not a disqualifying conflict, the bankruptcy court found that A&R had failed to make adequate disclosures under Bankruptcy Rule 2014(a) of the source of its retainer and of its previous relationship with the debtors.  The bankruptcy court found, however, that none of these disclosure errors were intentional and that no harm or prejudice to the estate or creditors resulted.  The court ordered a sanction of $135,000, or approximately twenty percent of the total fees awarded to A&R.[10]  On appeal, the Trustee argues that all compensation should have been disgorged.

"Federal Rule of Bankruptcy Procedure 2014(a) requires any professional applying for employment to set forth 'to the best of the applicant's knowledge' all known connections of the applicant with the 'debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.'" *West Delta Oil*, 432 F.3d at 355 (quoting Fed. R. Bankr. P. 2014(a)).  The disclosure requirements of Rule 2014(a) are broader than the rules governing disqualification, and an applicant must disclose all connections regardless of whether they are sufficient to rise to the level of a disqualifying interest under Section 327(a).  *See In re Cornerstone Prods., Inc.*, 416 B.R. 591, 608 (Bankr. E.D. Tex. 2008)  (stating that "all" connections must be disclosed); *In re Leslie Fay Cos.,* 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (same).

---

[10] The district court also found no error in this ruling.

No. 11-30462

Courts may deny all compensation to professionals who fail to make adequate disclosure, and "counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *West Delta Oil*, 432 F.3d at 355 (quotation marks omitted); *see also Rome v. Braunstein*, 19 F.3d 54, 59–60 (1st Cir. 1994) ("Absent the spontaneous, timely and complete disclosure required by section 327(a) and [Rule] 2014(a), court-appointed counsel proceed *at their own risk*."). In determining an appropriate sanction, an important consideration is whether the failure was intentional. *Crivello*, 134 F.3d at 839 (stating that "a bankruptcy court should punish a willful failure to disclose the connections . . . as severely as an attempt to put forth a fraud on the court."). We review a bankruptcy court's decision to impose sanctions for abuse of discretion. *West Delta Oil*, 432 F.3d at 358.

The Trustee argues on appeal that the bankruptcy court erred in finding that the disclosure errors were unintentional, arguing that the failure must have been intentional because of the number of times that A&R failed to disclose its relationships to the debtors and GCA. The Trustee is correct that A&R had many opportunities to make full disclosure. Nonetheless, evidence in the record shows that attorneys at A&R believed full disclosure had been made in their employment application, and that the initial disclosure failure was the result of negligence. The testimony at trial indicates the items that were disclosed were compiled by an associate with little or no bankruptcy experience, that they were then listed in the application without verification by Dean Ferguson, and that the application was signed and filed by another attorney with no additional review. Additionally, later email correspondence between Dean Ferguson and another attorney also supports the conclusion that the disclosure errors were inadvertent.

No. 11-30462

Given that the bankruptcy court's factual findings are reasonable based on the record, we conclude that bankruptcy court did not commit clear error. *See United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007) (factual findings are not clear error if they are "plausible in light of the record as a whole"). Accordingly, we hold that the bankruptcy court was acting well within its discretion in ordering disgorgement of only a portion of the retainer. *See West Delta Oil*, 432 F.3d at 355 n.22 (stating that review of sanctions is for abuse of discretion); *In re Cook*, 223 B.R. 782, 794 (B.A.P. 10th Cir. 1998) (same).

**C.  Denial of Leave to Amend**

Finally, the Trustee argues that the bankruptcy court abused its discretion when it denied in part his motion for leave to file a third amended complaint.[11] In the motion to file a third amended complaint, the Trustee sought to add much broader claims for fraud, fraudulent inducement, conspiracy, and breach of duty. The Trustee claimed that he discovered three new documents that were previously unavailable. The bankruptcy court denied in part and granted in part the motion, allowing the breach of duty claim, but not the fraud-based claims.

We review a decision to deny leave to amend under Federal Rule of Civil Procedure 15(a) for abuse of discretion. *Gentilello*, 627 F.3d at 546; Fed. R. Civ. P. 15(a).  When considering whether to allow amendment, a court should consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *In re Southmark*, 88 F.3d 311, 315 (5th Cir. 1996).

We hold that the bankruptcy court's decision to deny the amendment was not an abuse of discretion. The Trustee's unexplained delay in bringing these claims weighs in favor of finding that the denial of amendment was proper. *See*

---

[11] By this time, Robbye Waldron had replaced Jason Searcy as Trustee.

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) (stating that a "litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend," although noting the litigant should not be "punished" for not presenting a claim as "promptly as possible" (quotation marks and citation omitted)).  The "newly" discovered documents in this case had actually been available to the Appellants for a significant amount of time.[12]  Other than noting that the current Trustee was appointed somewhat recently, and pointing to the complexity and length of the record, the Appellant offers little explanation for waiting to assert these claims.

Similarly, the newly added fraud claims would have dramatically altered the subject matter of the suit at a late juncture.  A court is often justified in denying a motion for leave to amend when it would "fundamentally alter the nature of the case." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004).  As it stood, this suit was a fairly limited action to determine whether A&R possessed a disqualifying conflict of interest, and potentially, the amount of disgorgement.  The fraud claims would not have been factually similar to the disgorgement claim and they likely would have required expansive discovery and litigation, thereby delaying resolution of the case.  Accordingly, we hold that the bankruptcy court did not abuse its discretion in denying in part the motion for leave to file a third amended complaint.  *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (affirming denial of motion to amend where plaintiff was not diligent in asserting claim for fraud and had failed to take advantage of earlier opportunities to amend); *Smith v. EMC Corp.*,

---

[12] The first two documents—copies of the consent agreement between GCA and AIPC, and the Dividend Assignment—were actually available throughout the entire adversary proceeding and were also known to the Equity Committee during the underlying bankruptcy action.  The third document—an email from Dean Ferguson to other lawyers at A&R—was admitted over a year earlier, and it had been submitted to the court by the Trustee in opposition to Appellee's motion for partial summary judgment.  Thus, the grounds for this claim were actually known to the Appellant for at least a year, and likely for much longer.

No. 11-30462

393 F.3d 590, 595 (5th Cir. 2004) (citing "undue delay" as a factor weighing against allowing amendment); *Southmark*, 88 F.3d at 315–16 (affirming denial of motion to amend where plaintiff sought to add claim that it had knowledge of for almost a year and stating that "[l]iberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time"). [13]

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[13] The bankruptcy court also found that the amendment was futile. Because we can affirm the denial on other grounds, we need not decide whether the proposed third amended complaint would have adequately stated a claim for fraud. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (stating that an amendment is futile when it would fail to state a claim).