**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1147
_____

IN RE: THOMAS W. OLICK,
Debtor

THOMAS W. OLICK,
Appellant

v.

JAMES KEARNEY; THOMAS JENKINS;
THE KNIGHTS OF COLUMBUS; AETNA LIFE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:10-cv-00458)
District Judge:  Honorable William H. Yohn
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 20, 2012
Before:  JORDAN, HARDIMAN and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  September 21, 2012)
_____

OPINION
_____

PER CURIAM

Thomas Olick, proceeding pro se and in forma pauperis, seeks review of a series

of decisions from the United States Bankruptcy Court for the Eastern District of

Pennsylvania.  We will affirm.

I.

Although this appeal arises from a bankruptcy action, its roots extend to 2006, when appellant Olick filed a pro se complaint in Northampton County, Pennsylvania against the Knights of Columbus ("Knights") and James Kearney ("Kearney").  Olick, a former insurance salesman for the Knights, attacked both the circumstances surrounding his termination from their employ and the adverse benefits-related consequences of the termination, raising claims under a variety of legal theories.[1]  Olick later amended his state complaint, adding defendant Aetna, who successfully removed the matter to the United States District Court for the Eastern District of Pennsylvania in April 2006, where it was eventually consolidated with another federal suit against the same defendants; Thomas Jenkins ("Jenkins"), the final party (who allegedly "replaced" Olick in his former capacity for the Knights), was added via amended complaint shortly thereafter.  See E.D. Pa. Civ. Nos. 2:06-cv-01531, 2:07-cv-00121.  In a thorough opinion, the District Court granted some parts of the defendants' motions to dismiss and denied other parts without prejudice to later renewal via motion for summary judgment.  See generally Olick v. Kearney, 451 F. Supp. 2d 665 (E.D. Pa. 2006).  Afterwards, Olick moved to dismiss the case without prejudice pursuant to Fed. R. Civ. P. 41(a)(1), a request the

_____

[1] Because the lower courts rendered a number of thorough decisions explaining the factual history of the case and identifying the relevant actors, we will not engage in an extended factual recitation and will assume the parties' familiarity with the matter.

2

District Court granted on February 20, 2007.

This dismissal, however, did not bring matters to a close, for Olick had filed for Chapter 13 bankruptcy protection a few days earlier, see E.D. Pa. Bankr. No. 07-10880. In connection with the new bankruptcy action, Olick commenced two adversary proceedings, docketed as 07-00052 and 07-00060,[2] that asserted substantially the same claims against the Knights, Kearney, Jenkins, and Aetna that he had raised earlier in his Northampton and District Court suits. Recognizing that this duplication posed a problem, Bankruptcy Judge Frank decided to "adopt a particular case management philosophy," treating the new actions as proceedings "designed to 'complete' the prior litigation . . . that was near disposition (by summary judgment and/or trial) at the time of Mr. Olick's voluntary dismissal under Rule 41." Olick v. Kearney (In re Olick), Adv. No. 07-060, 2008 Bankr. LEXIS 3521, at *11–12 (Bankr. E.D. Pa. Aug. 12, 2008). Judge Frank's first order of business was to sift through Olick's voluminous filings, structuring the allegations into ten recognizable counts. The final list, to which all parties have referred throughout this litigation, was as follows:

- Count 1: Age discrimination and retaliation against Aetna, the Knights, Kearney, and Jenkins, pursuant to the ADEA[3] and its Pennsylvania and Connecticut state-law equivalents;
- Count 2: "Job discrimination" against the Knights and Kearney;

---

[2] These proceedings themselves were eventually consolidated. All bankruptcy court docket references in this opinion refer to the numbering from 07-00060.

[3] Age Discrimination in Employment Act, Pub. L. No. 90-202, 81 Stat. 602 (codified at 29 U.S.C. § 621 *et seq.*).

- Count 3: "Violations of ERISA[4] and COBRA[5] Laws." Judge Frank subdivided this allegation into several subclaims:
  - Count 3A: Violation of COBRA sections 502(a)(1)(A) and 606(a)(4) against the Knights and Aetna;
  - Count 3B: Violation of ERISA section 502(a)(1)(B) against the Knights and Aetna;
  - Count 3C: Violation of ERISA section 502(a)(3)(B) against the Knights and Aetna;
  - Count 3D: Violation of ERISA sections 502(a)(2)(B) and 409(a) against the Knights and Aetna;
- Count 4: Breach of contract against the Knights and Kearney;
- Count 5: Tortious interference in business and contracts against the Knights, Kearney, and Jenkins;
- Count 6: Breach of contract against Aetna; and
- Count 7: Breach of contract and conversion against the Knights.

In a June 2007 order, Judge Frank dismissed several of the claims. See ECF No. 73. Count 1 against Aetna was dismissed, per Olick's express consent; Count 3A was dismissed against Aetna; Count 3B was dismissed against the Knights; Count 3D was dismissed against all defendants; and Count 6 was dismissed against Aetna. This had the effect of "narrow[ing] the claims . . . to those that had survived the motions to dismiss in the District Court case." Olick, 2008 Bankr. LEXIS 3521, at *10.

Several other counts would also be resolved before trial. In a March 2008 oral opinion rendered from the bench, the Bankruptcy Court granted summary judgment in favor of the defendants on: the Count 1 discrimination claim (but not the retaliation

---

[4] Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. § 1001 et seq.).

[5] Consolidated Omnibus Budget Reconciliation Act, Pub. L. No. 99-272, 100 Stat. 82 (codified at 29 U.S.C. §(S) 1161 et seq.).

4

claim), the Count 2 job discrimination claim, the Count 3C equitable claim for premiums (but not the equitable claims regarding policy conversion against the Knights), the Count 4 breach of contract claim, the Count 5 tortious interference claim, and the Count 7 breach of contract and conversion claim. See ECF No. 242 (order). Pursuant to motions for reconsideration filed in the wake of that opinion, the Court also granted summary judgment in favor of Jenkins on the Count 1 retaliation claim, see ECF No. 246,[6] and reaffirmed its decision to grant summary judgment in favor of Jenkins, Kearney, and the Knights on the Count 1 discrimination claim in an October 2008 opinion, see Olick v. Kearney (In re Olick), 398 B.R. 532 (Bankr. E.D. Pa. 2008). Around this time, Aetna and Olick entered into a Fed. R. Bankr. P. 7068 offer of judgment, which resolved the remaining claims against Aetna. See ECF Nos. 256 (offer), 286 (order). Left standing were the Count 1 ADEA retaliation claim against the Knights and Kearney, the Count 3A COBRA claim against the Knights, and the Count 3C equitable ERISA claim against the Knights.

Before we discuss the final merits determination in Bankruptcy Court, two additional non-merits orders require a mention. In October 2007, Olick was sanctioned in the amount of $1,000 for his attempt to relitigate claims against Aetna that had already been dismissed by the District Court. See ECF No. 167. And in August 2008, the Bankruptcy Court addressed a Fed. R. Bankr. P. 7054(b) costs dispute between Aetna and

---

[6] Originally, the Court accidentally granted summary judgment in favor of Kearney, see ECF No. 242, but later corrected its order in the entry discussed above.

Olick, finding that Olick was entitled to costs in the amount of $1,349.50 against Aetna. See generally Olick, 2008 Bankr. LEXIS 3521.

The parties took the remaining three claims to trial in December 2008. In a comprehensive opinion containing numerous findings of fact, the Bankruptcy Court entered judgment in favor of Olick and against the Knights on Counts 1 and 3A, for a combined judgment amount of $14,997.83. The Court entered judgment in favor of Kearney on Count 1 and in favor of the Knights on Count 3C. See generally Olick v. Kearney (In re Olick), 422 B.R. 507 (Bankr. E.D. Pa. 2009).

Olick appealed in forma pauperis to the District Court, attacking the orders discussed above (with the exception of the initial June 2007 dismissal). The District Court affirmed. See generally Olick v. Kearney (In re Olick), 466 B.R. 680 (E.D. Pa. 2011). Significantly, Judge Yohn declined to reach any of the claims resolved from the bench in the March 2008 summary judgment opinion, as Olick had failed to provide transcripts of that decision, stymieing review. See id. at 694–95 & n.15. Although Olick did not timely appeal, he filed a motion in which he claimed to have never received the Court's final order, along with a tardy notice of appeal. The District Court granted relief pursuant to Fed. R. App. P. 4(a)(4)(A)(6), bringing the matter before us. It has been fully briefed[7] and is ripe for disposition.

---

[7] Olick's motion to file an oversized brief is granted.

The appellees argue that this appeal should be dismissed because of Olick's failure to follow the applicable rules in preparing and submitting his brief. They describe Olick's

II.

We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. In re Phila.

Newspapers, LLC, No. 11-3257, ___ F.3d ___, 2012 U.S. App. LEXIS 15419, at *10 (3d

Cir. Pa. July 26, 2012). We duplicate the standard of review employed by the District

Court and evaluate the Bankruptcy Court's orders "unfettered by the District Court's

determination." In re Orton, No. 11-4157, ___ F.3d ___, 2012 U.S. App. LEXIS 14898,

at *4 (3d Cir. Pa. July 20, 2012); Lampe v. Lampe, 665 F.3d 506, 513 (3d Cir. 2011) ("In

effect, we are reviewing the Bankruptcy Court's disposition of this case."). We review

grants of summary judgment arising out of bankruptcy adversary proceedings de novo.

See Robeson Indus. Corp. v. Hartford Accident & Indem. Co. (In re Robeson Indus.

Corp.), 178 F.3d 160, 164 (3d Cir. 1999). With regard to the claims resolved after trial,

we apply a "clearly erroneous standard to the Bankruptcy Court's findings of fact and a

---

opening brief as "overlong, rambling, [and] largely indecipherable," referencing its
"Joycean, stream-of-consciousness" presentation. Br. for Appellees 8–9. They appear to
maintain, too, that Olick should not be afforded any of the leeway normally given to pro
se litigants because he "has filed over 150 lawsuits throughout the country" and "has . . .
been a staunch critic of the judiciary during his tenure as a professional plaintiff." Br. for
Appellees 2 & n.2.

We will not accept the appellees' invitation to dismiss this action. First, in the pantheon
of pro se filings, Olick's submissions are not nearly as impenetrable as the appellees
suggest—disorganized and strident, perhaps, but hardly "stream-of-consciousness" (nor,
for that matter, do we detect any similarity to the works of Joyce). Indeed, his materials
before this Court are not an extraordinary departure from those filed below, which were
sufficient to lead to partial judgment in his favor. Second, Olick's antagonism towards
the judiciary and his status as a frequent plaintiff are of limited relevance. Thus, we will
reach the merits of this appeal, liberally construing Olick's submissions as raising the
same claims argued before the District Court.

7

plenary standard to its legal conclusions." Orton, 2012 U.S. App. LEXIS 14898, at *4 (citations, quotations omitted); see also Fed. R. Bankr. P. 8013. "A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Schlumberger Res. Mgmt. Servs. v. CellNet Data Sys. (In re CellNet Data Sys.), 327 F.3d 242, 244 (3d Cir. 2003) (citations, quotations omitted). The decisions by the Bankruptcy Court to impose sanctions upon Olick and to allocate costs are reviewed for abuse of discretion. See Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.), 676 F.3d 455, 461 (5th Cir. 2012); In re Gioioso, 979 F.2d 956, 962 (3d Cir. 1992). An abuse of discretion occurs when the Court rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact. Cross-Appellees in 09-1432 v. BEPCO, LP (In re 15375 Mem'l Corp.), 589 F.3d 605, 616 (3d Cir. 2009) (quotations, citations omitted).

III.

We will begin our discussion with the Bankruptcy Court's merits dispositions: its March 2008 summary judgment order, its October 2008 summary judgment reaffirmance, and its 2009 post-trial opinion. However, we immediately encounter the same problem that the District Court faced, as Olick has failed to provide a transcript of the March 17, 2008 proceedings (ECF Nos. 240–41) that led to the bench opinion granting partial summary judgment. He has filed a motion to proceed pursuant to Fed. R. App. P. 24(c), claiming that his indigence prevents him from obtaining copies of the relevant transcripts;

8

in his brief, he argues that the Bankruptcy Court had an "obligation to state in writing the basis of [its] findings," and that a "destitute and/or bankrupt litigant should not be unreasonably prejudiced in a suit or appeal because he cannot afford to purchase transcripts of all pre-trial hearings." See Br. for Appellant 13. He argues further that the appellees were obligated to produce the missing portions of the record pursuant to Fed. R. App. P. 6(b)(2)(B)(ii).

Under Fed. R. App. P. 10(b) and 3d Cir. L.A.R. 11.1, the appellant, not the appellee, is responsible for transmitting the necessary elements of the record in support of the appeal. As L.A.R. 11.1 makes plain, indigent appellants have the option of moving for transcripts to be provided at the Government's expense pursuant to 28 U.S.C. § 753(f). Although summary judgment involves an independent examining and reevaluation of record evidence, see Dubbs v. CIA, 866 F.2d 1114, 1118 (9th Cir. 1989), Olick does not point to any occasions where a Court of Appeals has excused Rule 10(b) compliance in a situation such as this. Instead, noncompliance is generally answered by holding that the appellant has waived his claims on the relevant grounds. See, e.g., Powell v. Estelle, 959 F.2d 22, 26 (5th Cir. 1992); Keller v. Prince George's Cnty., 827 F.2d 952, 954 n.1 (4th Cir. 1987). Nor is it obvious that review would even be possible absent the transcript, see RK Co. v. See, 622 F.3d 846, 853 (7th Cir. 2010), because it is unclear whether any additional evidence or argumentation was submitted at the two hearings in question. Because Olick has failed to secure a transcript despite having ample time to do so and despite the availability of § 753(f), we will follow the District

9

Court's example and will deem objections to the March 2008 summary judgment order to be waived.[8]  Olick's Rule 24(c) motion is denied.

Because Olick does not appear to challenge the grant of summary judgment in favor of Jenkins, we move to the Bankruptcy Court's opinion reaffirming its grant of summary judgment in favor of the Knights and Kearney on the Count 1 ADEA age discrimination claim.[9]  The Court held, principally, that Olick failed to meet his burden under Step 3 of the test in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which requires a plaintiff to show that the defendant's proffered reason for an adverse employment action—in this case, poor employment performance—was pretext.  Id. at 804; see also Smith v. City of Allentown, 589 F.3d 684, 690–91 (3d Cir. 2009) (reaffirming the applicability of McDonnell in the ADEA context after Gross v. FBL

---

[8] We should note, however, that Olick misconstrues some of the proceedings below.  For example, he argues that in the original District Court suit (the one removed from state court), District Judge Katz concluded that the defendants were "not immune to a claim of tort[i]ous interference with business," an un-appealed conclusion that therefore "became res judicata."  Br. for Appellant 30; Olick, 451 F. Supp. 2d at 676–77.  He appears to suggest that this rendered the March 2008 summary judgment order per se invalid as to this and similar claims.  But Judge Katz's observation was made in the context of a motion to dismiss.  By contrast, "a motion for summary judgment by definition entails an opportunity for a supplementation of the record, and accordingly *a greater showing is demanded of the plaintiff*."  Wilderness Soc. v. Griles, 824 F.2d 4, 16 (D.C. Cir. 1987) (emphasis added).  These two holdings are by no means at odds; that the defendants were not *immune* to suit does not imply the existence of a genuine issue of material fact as to their culpability.  See Fed. R. Civ. P. 56(a).

[9] Olick points out that the Bankruptcy Court's "Final Order is silent as to whether Kearney's 2/1/05 reduction of Olick's territory and its assignment to an inexperienced agent (Jenkins) was evidence of age discrimination."  Br. for Appellant 26.  While he is

Financial Services, 557 U.S. 167 (2009)).  Having reviewed the record and examined Olick's arguments on appeal, we conclude that summary judgment was appropriate. Construing the evidence in the light most favorable to Olick, we are convinced, for substantially the same reasons discussed in the Bankruptcy Court's opinion, that no "reasonable jury [would] find that appellees acted with discriminatory intent when they terminated" him.  Smith, 589 F.3d at 689, 692.

Next, we address the Bankruptcy Court's post-trial decision, which resolved some claims in Olick's favor and others in the defendants' favor.  Olick argues that the Bankruptcy Court oversimplified the matter when it determined that, because Kearney functioned "only as Olick's supervisor, not his employer," an age discrimination retaliation claim could not lie against him.  Olick, 422 B.R. at 541; Br. for Appellant 15. Specifically, Olick points to 43 Pa. Cons. Stat. Ann. § 955(d), which prohibits any "person" from "discriminat[ing] in any manner against any individual because such individual has opposed any practice forbidden by this act," where "practice" includes employment discrimination on the basis of age.  Conn. Gen. Stat. § 46a-60(a)(4) contains similar language, and also uses "person."  Both state statutes define "person" quite broadly.  See 43 Pa. Cons. Stat. Ann. § 954(a); Conn. Gen. Stat. § 46a-51(14).  By contrast, the ADEA's retaliation subsection does not extend to activities perpetuated by "persons" who are not "employers," "employment agencies," or "labor organizations."

correct, the Bankruptcy Court was "silent" because that claim was resolved *before* the Court issued its final order.

11

29 U.S.C. § 623(d). While the Bankruptcy Court observed that states generally construe their respective anti-discrimination statutes consistently with their federal counterparts, Olick, 422 B.R. at 542 n.45 (collecting cases), it arguably erred by failing to realize that Kearney, while immune under the federal statute, might not be so under its state equivalents. To the extent that this was error, however, it was harmless. The Bankruptcy Court specifically found that Lee was the Knights representative who made the decision to use November 1, 2005, as the "qualifying event" on Olick's COBRA notice, id. at 528; because we agree with the Bankruptcy Court that no causal connection existed between Olick's protected activity and the termination of his field-agent contract, see id. at 545–46, the back-dating remains the sole actionable retaliation count, and it is clear that Kearney had no involvement in that activity. Olick also argues that one of the Bankruptcy Court's secondary factual findings—that Lee discovered the 2005 Notice of Intent to Terminate in Olick's personnel file shortly after Olick filed his first suit against the Knights, see id. at 524 n.15—is clearly erroneous, and he insists that all holdings "deriving from this false conclusion" are thus suspect and should be reversed. Br. for Appellant 14. Assuming arguendo that this finding was clearly erroneous, Olick has pointed to no holding or outcome rendered infirm by this mistake, which appears to have been of little overall relevance to his claims. We have reviewed Olick's COBRA and ERISA claims and find no reason to disturb the judgment of the Bankruptcy Court, which is affirmed for substantially the same reasons stated in its opinion.

Finally, we turn to the sanctions and costs orders. We see nothing amiss in the

12

imposition of sanctions based on a violation of res judicata, nor in the procedure utilized by the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9011.  See Prof'l Mgmt. Assocs. v. KPMG LLP, 345 F.3d 1030, 1033 (8th Cir. 2003) (per curiam); Estate of Blue v. Cnty. of L.A., 120 F.3d 982, 985 (9th Cir. 1997); cf. Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 222–23 (3d Cir. 2003) (discussing preclusionary principles in the context of voluntary dismissals).  And with regard to costs, Olick mischaracterizes what the Bankruptcy Court was required to consider.  He argues that it improperly held that he was "barred" from recovering additional costs from Aetna because "he had refused a prior [o]ffer," whose terms were not nearly as favorable, "in a different venue."  Br. for Appellant 2.  However, under Fed. R. Bankr. P. 7054(b), a Bankruptcy Court "*may* allow costs to the prevailing party" (emphasis added), granting the Court a great deal of discretion.  The Court determined that a 2006 offer of judgment sent by Aetna was substantially equivalent to a later, 2008 offer of judgment that Olick accepted.  While stressing that it was not suggesting that "every time a party rejects a Rule 68 Offer and achieves no better result, all costs arising after the rejection of the offer should be denied," the Court nevertheless concluded that Olick had made no "showing nor provided any explanation why he doggedly pursued his claims against Aetna even though Aetna had already offered him, through the Rule 68 Offer, *all of the relief he could reasonably have expected to obtain from Aetna*."  Olick, 2008 Bankr. LEXIS 3521, at *46–47 (emphasis added).  Even if the previous offer was less favorable to Olick, this resolution would have been well within the Bankruptcy Court's discretion, but we are also in accord

13

with the District Court that—contrary to Olick's assertions—the 2006 offer of judgment "did not contain any provision requiring that he pay premiums" or otherwise suggest bad faith. Olick, 466 B.R. at 693–94. As the record reveals, the Knights would have been responsible for premiums paid under the earlier offer of judgment. See Ex. 64, ECF No. 118-4. Finding no abuse of discretion, we will affirm for substantially the same reasons contained in the Bankruptcy Court's opinion.

IV.

We have thoroughly examined the lengthy record in this case; and, in light of the often-conflicting testimony given by the Knights defendants and their paltry evidentiary proffer, we concur with the Bankruptcy Court that "the manner in which the Knights handled [Olick's] termination was clumsy [and] perhaps even incompetent." Olick, 422 B.R. at 545. Some of Olick's grievances were certainly legitimate, leading to his partial victory below. But because Olick has identified no material infirmity in the Bankruptcy Court's opinions and orders, we will affirm its judgment and the judgment of the District Court.[10]

---

[10] Olick's motion for "timely service of pleadings" is denied as unnecessary. We have full faith in the Clerk's ability to timely forward our decision to Olick.